85  313
215  4452

# THE ILLINOIS MIDLAND RAILWAY COMPANY

*v.*

# SUPERVISOR AND TOWN CLERK OF TOWN OF BARNETT.

1. MUNICIPAL SUBSCRIPTION—*condition as to amount of work done, construed.* A proviso in a statute authorizing a municipal subscription to a railway company, that the corporate bonds shall not be delivered until an amount of work shall have been done on the railroad in the town equal in value to the amount of the bonds, will be construed, not as referring to earth-work alone, but the word "work" will embrace all that enters into the construction of the road-bed complete for the cars.

2. SAME—*alteration of petition for election.* Where a petition calling for an election to take a corporate subscription in a railway company, was, on the morning of the election, altered by striking out a clause that the bonds were to be delivered as fast as the work on the road should progress within the town, leaving the statutory condition to apply, that no bonds should be delivered until the value of the work on the road should equal the amount subscribed, it was *held,* that as the alteration worked no injury on the town, it did not invalidate the election, or work a loss as to the right of the company to have the bonds issued and delivered.

3. SAME—*purchase of another road as a defense.* Where, at the time a corporate subscription to a railway company is voted, the law authorizes such company to consolidate or purchase other roads connecting with it, the subsequent exercise of the power given by law, in the purchase of a connecting road, will not defeat the subscription so voted; and if the purchase is unauthorized, it will form no excuse for not paying a subscription previously made.

4. SAME—*fraudulent representations to induce vote.* Where the petition for an election, to vote upon taking a subscription by a town for a railroad, provided only that the road should run through the town, without fixing any more definite line, evidence that the officers of the company, at the election, made speeches declaring that the road would be located through the center of the town, when, in fact, it was subsequently located through

the town on one side thereof, without any offer to prove that such declarations were not made in good faith at the time, and were relied on by a sufficient number of voters to have changed the result, is properly excluded.

5. SAME—*tender of stock.* Where corporate authorities, when called upon to make a 'subscription to a railway company and deliver bonds in pursuance of a vote, refuse to issue the same, no tender of certificates of stock is necessary before applying for a *mandamus* to compel their issue and delivery. A readiness to deliver such certificates is sufficient.

6. SAME—*when vote is equivalent to actual subscription.* Where a subscription is voted in favor of a railway company by a town, under a law which leaves no discretion in its officers but to make the subscription without unnecessary delay, a *mandamus* may be awarded to compel the issue and delivery of the bonds of the town, although no formal subscription has been made upon the books of the company.

7. RAILROADS—*change of name.* A finding, that a resolution for the change of the name of a railway company was adopted by a two-thirds vote of the stockholders, and that the required certificates of the change were filed in the proper offices, will be sufficient to show a *prima facie* compliance with the statute.

8. PLEADING AND EVIDENCE—*proof as to matters not in issue.* It can not be urged, in defense to a petition for a *mandamus* for the issue of corporate bonds voted, that the company suing had purchased another railroad or exchanged stock with such other company, where there is no such defense alleged in the answer, but only a consolidation with such company is averred.

9. VARIANCE—*exhibit in petition for mandamus.* It is not a fatal objection to awarding a *mandamus* to compel the issue of corporate bonds voted as a subscription, that the copy of the petition for the election set out in the pleadings, is not the same as the one signed by the original petitioners, it having been altered in an immaterial respect. The strict rule applicable to instruments declared on does not apply.

This was an application in this court, by the Illinois Midland Railway Company, for a *mandamus.*

Mr. R. G. INGERSOLL, and Mr. W. S. BUSH, for the relator.

Messrs. MOORE & WARNER, for the respondents.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This is a petition for a *mandamus,* filed in this court, to compel the issue to the petitioner, by the supervisor of the

town of Barnett, in De Witt county, of $30,000 of bonds of said town.

The petition sets forth, that on the 10th day of August, 1869, in pursuance of "An act to incorporate the Peoria, Atlanta and Decatur Railroad Company," approved March 1, 1869, (Private Laws, 1869, vol. 3, p. 173,) there was submitted to the voters of said town, at an election held for the purpose, the question of subscribing $30,000 to the capital stock of said company, by the town; that a majority of the votes were cast for such subscription, provided the grading, bridging and tieing of the road should be completed in the township before the delivery of the bonds. Upon such a vote the act makes it the duty of the supervisor of the town, without unnecessary delay, to make the subscription and to issue and deliver to the company the bonds of the town to the amount of the subscription. The petition alleges, that on the 15th day of October, 1874, the company, in pursuance of the act of March 26, 1872, duly changed its name to that of the Illinois Midland Railway Company. Other sufficient allegations are made to entitle the petitioner to the bonds. Answer was made traversing the allegations of the petition, and setting up matters of defense.

The cause was sent to the De Witt circuit court for trial of issues of fact.

A large number of findings of fact by the jury upon such issues have been returned.

Motions to set aside certain findings were made by each party, and overruled by the circuit court, and exceptions taken.

The only findings which defendants moved to set aside were the 2d, 4th, 8th and 33d.

The second, found the value of the grading, bridging, tieing, laying track and surfacing in the town, to be $11,000. The evidence sustains this finding; and if it did not, the finding is an immaterial one.

The condition of the subscription in this respect, made by the voters, was, that the grading, bridging and tieing of the road in the township be completed, without any reference to value. This was found to have been done. In this connec-

tion may be noticed the point, whether the findings of fact show the performance of the condition required by the act itself, which authorizes the vote for subscription.

It is made a proviso in the act, that the bonds shall not be delivered to the railroad company until an amount of work shall have been done on the railroad in the town equal in value to the amount of the bonds. The first finding was, that the amount of work done by the petitioner prior to filing the petition, on the railroad, including all work and materials furnished, grading, ties, iron, switches and other improvements done and placed in Barnett township, was $60,000. Defendant contends that this does not show an amount of " work done," as required by the act, in Barnett township, equal in value to the amount of the bonds, $30,000; that the term " work " means " earth-work," instead of construction of the railway. We can not adopt this restricted meaning of the word. We consider it as embracing all that enters into the construction of the road-bed complete for the cars, and that the required amount of work was done in the town.

The fourth finding was, that the town clerk of the town of Barnett, in pursuance of the petition signed by more than fifteen legal voters of the town, gave due notice of the election.

The eighth, that the majority of the legal voters voting at the election, voted in favor of the subscription. The evidence appears to support both these findings.

The thirty-third finding was, that the petition was not fraudulently altered as charged, by the railroad company or its agents.

The charge in defendants' answer to the petition was, that the petition, at the time it was signed by the seventeen voters and tax-payers whose names appear thereto, contained this clause: " Said bonds to be delivered to said railroad company as fast as the work on said railroad within said township progresses;" that on the day, or day before, of the election, the petition was, by the railroad company, its servants or agents. fraudulently changed by striking out that clause. This charge was not sustained by the evidence. As, however, the petition

was actually changed by the erasure of this clause on the morning of the election, and the writing filed with the petition for the *mandamus* in this case, as an exhibit, gives the petition for the election only as it now appears, without this clause, and the answer denies that the petition for election set forth by the relator in its petition, is a true and correct copy of the petition for election at the time it was signed, defendants insist the petitioner must be defeated because of this variance.     It is true, that this particular issue of fact should be found for defendants.     But what matters it?     Either petition, with or without such clause, would authorize the calling of the election.     The change in the petition was all for the benefit of the town.     The clause as originally in the petition required the bonds to be delivered to the railroad company as fast as the work within the town progressed.     The clause stricken out left the proviso of the statute in full operation, which forbade the delivery of the bonds until the full amount of the work within the town, of $30,000, had been done.     This embraced all, and more than the clause stricken out, so far as concerned the protection of the town.     No blame attaching to the railroad company in respect of the alteration in the petition, it should not be visited with loss because of such alteration.     It would seem to be supposed, that the same rule of strictness in regard to variance is to be applied here, which prevails at law where an instrument declared upon is set out *in hæc verba;* and that if the exhibit made does not correspond, in every particular, with the petition for election as it was, at the time when it was signed, the variance is fatal.     We can not say that such a rule, or the reason of it, has application to the present case.

This disposes, really, of all the objections which we consider the defendants entitled to make, as the case is presented by the record.

We will, however, advert to some other objections which have been strenuously urged.

It is objected, that the name of the company was not legally changed.     The jury find that, as required by the statute, there

was a resolution for the change of the name by a two-thirds vote of the stockholders, and that the required certificates of the change were filed in the proper offices, thus showing, we consider, at least a *prima facie* compliance with the requirements of the statute in this regard. There was no motion to set aside the finding. It is said the proper stockholders did not vote—that the stockholders of the Paris and Decatur, and Paris and Terre Haute railroad companies voted at the meeting. The record does not show this. It shows that resolutions were adopted permitting the exchange of the stock of the above mentioned companies for that of the Peoria, Atlanta, and Decatur Railroad Company, nothing more.

The point is urged, that there was a purchase of the Paris and Decatur, and Paris and Terre Haute railroads. There is no averment of that kind in the answer. The averment in the answer is, of a *consolidation* with the above named companies. It is expressly said in the argument for defendants, that it is not pretended there was a consolidation, but that there was a purchase.

This would seem sufficiently to dispose of this point, as not being in issue.

At the time of voting the subscription, there was a general statute authorizing consolidation with other roads, and the charter of this company gave it power to unite or *connect* its railroad with any other continuous lines of railroad, and to lease or purchase any other roads or parts of roads which might constitute or be adopted as a part of their main line. If the purchase of said railroads was in pursuance of statutory authority existing at the time of the vote, there can be no just cause of complaint, as the vote must be held to have been given in view of the fact that the company might exercise such power.

If the purchase was unauthorized, we do not consider that it forms an excuse for not paying subscriptions previously made. In *The People* v. *Logan County*, 63 Ill. 387, it was said, in reference to a somewhat analogous question, that if the railroad company had exceeded their powers by giving a per-

petual lease of their road, instead of one for years, the county would have its remedy against such an exercise of power after receiving its shares of stock, but that it formed no excuse for not paying subscriptions previously made. The remark, we think, applies equally here. See also, *The Ottawa, Oswego and Fox River Valley R. R. Co.* v. *Black* 79, Ill. 262, and *Hays* v. *Same company*, 61 Ill. 422.

A point is made with respect to an alleged fraudulent change of route. The averment of the answer in this respect is, that the company, by its agents, fraudulently and with the intent to deceive and defraud the voters of the town, did, just before and at the time of the election, falsely represent that the road would be located and run on a named line which would run south-east from Waynesville, (which was in the township north,) through or near the centre of the town of Barnett; that the voters of the town, relying upon such representations, did present to the town clerk a town, etc.; that the company did not build the road on that petition which was signed by at least fifteen voters of the line, but run the road south-west from Waynesville, and down along near the west line of the town of Barnett, only one-half mile from the west line.

The objection comes up here to the exclusion of evidence. The circuit court seems to have taken the view, that this averment was with reference solely to the signing of the petition for the election, and confined the proof of fraudulent representations to the persons who signed the petition, and, in that respect, there was a finding by the jury, that two of the persons who signed the petition were induced to do so by the fraudulent representations alleged. But this left the petition good as to fifteen, (there being seventeen names to the petition,) who had not been so deceived, and that finding is harmless.

Defendants offered to prove by twenty-one named persons, that the latter were at the school house, in Barnett township, and heard the president of the road make a speech, in which he told them that the road should run, if they would vote the $30,000, through the centre of Barnett township, or within a

short distance from it; and, further, that they proposed to prove by some of such persons, that one Dragstone told them that he was directed to get the right of way for half a mile on each side of the centre line of the township of Barnett running north and south. This was objected to, and the objection sustained. It is to the exclusion of this testimony that the objection is made. Even admitting that the evidence on this head should not have been confined solely to those signing the petition for the election, we could not say that the court erred in the rejection of this testimony. There were witnesses who did testify as to this speech of the president of the road, in testimony received as to the signers of the petition for election, from which it would appear that it was no more than an expression of opinion where the road would run. It appears that there was no route surveyed prior to the election. There is nothing going to show, or offered to be shown, that the expression of opinion and statements made, were not in good faith, more than the fact of the difference in the line which was finally adopted. To make a case of fraud, the representations should have been relied upon, too.

No offer was made to prove, by these men, that they acted and voted upon these representations, and that they would not have voted for the subscription had they known the line would be located where it now is. The petition for the election, itself, shows what the reliance was as to the line of the road. It contains this upon the subject: "*Provided,* said road runs inside the corporate limits of the town of Waynesville, and through the township of Barnett;" showing that a condition was exacted upon the very subject of the line of the road, and it was not required to be any more definite than as above. If there was a compliance with that condition, there would seem to be no just ground of complaint as to the line of the road. The voters, on coming to vote, required a still further condition, which was inserted in the poll-book, and in the printed form of ticket which was voted: "*Provided,* the grading, tieing and bridging of said road be completed in said township before the bonds are delivered to said company." In

this anxious care for written conditions, had the building of the road on this particular line, as now suggested, been a material condition of the vote, we should suppose it would have been expressed among the others. If the votes of these persons, and all others, as to whom there was any attempt to prove specifically that they were influenced by representations as to the line, were discarded, it would not overcome the majority for subscription, it being forty-five. The offered testimony, together with all that was introduced, would have failed to establish any case of fraud. There was, in our opinion, no material error in the exclusion of evidence.

It is objected, that there was no tender by the company of any certificates of stock. The jury did so find, but the finding was clearly against the evidence; and, besides, the tender was not material. On demand made of the supervisor of the town for the bonds, he refused to issue them. An actual tender of certificates of stock was not then necessary. A readiness to deliver them was sufficient, and this was amply shown. *Smith* v. *Gillett,* 50 Ill. 290.

The point is made, that there has been no subscription for the stock. We do not consider it necessary that there should have been any formal subscription made on the books of the company. We regard the vote as enough.

The statute declares that, upon the vote for subscription, it shall be the duty of the supervisor of the town to subscribe without unnecessary delay, upon request of the company, for the shares of stock voted for, and to issue and deliver to the company, without unnecessary delay, the bonds, etc. A similar provision of law was construed in *The People* v. *Logan County, supra,* and the language was held to be peremptory, leaving no discretion to be exercised by the officer. *Naper Valley Railroad Co.* v. *Naper County,* 30 Cal. 437.

The record shows that the town of Barnett, in pursuance of the provisions of the statute, had voted to subscribe $30,000 in bonds on certain conditions set forth in the petition and the ballot voted; that the conditions, as well as the further one imposed by the statute, have been complied with. The more

material condition of the vote was, that the road was to run through the corporate limits of Waynesville, and through the township of Barnett. The payment was not made by the town, as it agreed, according to the tenor of the petition as originally signed, as fast as the work in the township progressed, nor according to the petition as it appeared at the time of the election, when the grading, bridging and tieing through the town was completed, but was refused, although the entire work in the town was completed, and the road was in full operation.

The duty of the supervisor, under the statute, is ministerial to issue the bonds, and the right to a peremptory writ of *mandamus* appears clear, and it is awarded.

*Mandamus awarded.*