THE PEOPLE *ex rel.* The Illinois Midland Railway Co.

*v.*

THE SUPERVISOR AND TOWN CLERK OF BARNETT.

1. MANDAMUS—*waiver of defective service.* Appearance and making return to a peremptory writ of *mandamus* is a waiver of any defect in the mode of serving the writ.

2. SAME—*right to use relator's name.* Where township bonds voted in aid of a railway company have been contracted to be paid by the company to another in part payment for work done, such other person will have implied

authority to use the name of the railway company as relator, in the prosecution of a suit against the town to compel the issuing of the bonds.

3. In a proceeding by *mandamus* to compel the ·issuing of corporate bonds of a town to a railway company, it is no concern of the town for whose use the suit may be prosecuted, or to whom the bonds may go when issued.

4. SAME—*by corporation does not abate by the appointment of a receiver.* The fact that a railway company has gone into the hands of a receiver during the pendency of a proceeding by *mandamus* to compel the issuing of bonds to the company, does not abate the suit, nor furnish any obstacle, so long as the receiver makes no objection to its going on to its termination.

5. SAME—*objections too late after writ granted.* After the final determination of a *mandamus* suit to compel a town to issue its corporate bonds to a railway company, the fraudulent and disastrous management of the affairs of the company to the prejudice of stockholders can not be set up as a reason for not obeying the mandate of the writ.

6. Where a peremptory writ of *mandamus* has been granted and issued for the issuing and delivery of corporate bonds subscribed, it is too late to object to the rate of interest required and the time the bonds are to run. Those questions should have been presented and determined before the issuing of the writ.

7. SAME—*excuse for not obeying writ.* A willingness expressed to execute and deliver corporate bonds of a town in pursuance of a writ of *mandamus,* upon receipt of a certificate of stock, and a refusal to give such certificate, it seems will excuse the respondent from obeying the mandate of the writ until the corporation relator is ready and willing to give the town such certificate ; but where no offer is made by the respondent to perform, or any willingness expressed to deliver the bonds, and it is evident he would have refused to deliver them if the stock had been tendered, the failure of the relator to tender the stock will furnish no excuse for not obeying the command of the writ.

8. SAME—*proper return.* The only proper return to a peremptory writ of *mandamus* is a certificate of ˙compliance with its requisitions, without further excuse or delay.

9. CORPORATION — *effect of going into hands of a receiver.* A railway corporation is not dissolved by the road going into the hands of a receiver, but it remains in being, capable of suing and being sued.

10. SUBSCRIPTION—*depreciation of stock no excuse for not paying subscription.* The fact that the stock of a corporation has been depreciated or even destroyed in value through the bad or fraudulent management of any of its officers, forms no ground for resisting payment of a subscription to its stock.

11. MUNICIPAL BONDS—*to whom to be delivered.* Where a writ of *mandamus* commanded the supervisor and town clerk of a town to deliver the bonds of the town, to a certain amount, to the relator, on its order, and the relator filed

in the papers its written order, under the corporate seal, to deliver the bonds to A and B, and also its receipt for the bonds, to be delivered upon the giving of the bonds to A and B, it was *held*, that a delivery to either the relator or to A and B would suffice, and might be done with safety to the town.

This was a proceeding by attachment against the supervisor and town clerk of the town of Barnett, for a contempt of this court in neglecting and refusing to execute and deliver to the relator, the Illinois Midland Railway Company, on its order, certain bonds of the town of Barnett, which had been voted as a subscription to the capital stock of a railway company. The facts of the case appear in the opinion.

Messrs. ROWELL & HAMILTON, for the relator:

The defendants enter their appearance and make return seeking to excuse their refusal to obey the order of this court.

1. They allege that the writ was not properly served. While it is true that, at common law, both the alternative and the peremptory writ of *mandamus* should be served by delivering the writ instead of a copy, it is doubtful, under our statute, whether the service in this case was not the proper one. But whether the service was technically correct or not, the defendants have waived it by making return. *Regina* v. *B. and O. R. R. Co.* 16 Eng. L. and Eq. Rep. 94; *People* v. *Bradley*, 60 Ill. 390.

2. As to the balance of the return, we have only to say: The only proper return to a peremptory writ of *mandamus* is a certificate of compliance with its requirements, without further excuse or delay. Redfield on Railways, 441; *State* v. *Smith*, 9 Iowa, 334.

Messrs. MOORE & WARNER, for the respondents:

1. No writ has ever been delivered to respondents. Delivery of a copy we think no service. The writ runs to the respondents, and how can they make any return on it when it was not delivered to them? The original writ must be deliv-

ered to one of the parties. Tapping on Mandamus, 330, 331, and cases cited in notes K and L.

2. After the return to the first writ, Dills and Dunham, two of the directors of relator, claimed the bonds, and demanded that the same be delivered to them, and not to the relator. This created a question of property, and the right to the possession of the bonds, which respondents must heed at their peril. This material fact was not set out in the petition or return. Rev. Stat. 1874, p. 691, sec. 7. This proceeding is in the nature of a bill in equity. *Comr's of Swan Township* v. *Walden,* 31 Ill. 101; *People et al.* v. *City of Elgin,* 66 id. 507; *Springfield, Illinois and Southeastern Railroad Co.* v. *Clerk Wayne Co.* 74 id. 27; *People* v. *Cline,* 63 id. 304; *Comr's of Highways* v. *People,* 66 id. 339; *Morgan County* v. *Thomas,* 76 id. 120; Kerr on Rescissions, 157, 158 and 161, and cases cited in note 1; *Wilson* v. *Allen,* 6 Barb. 542; *Hoyt* v. *Thompson,* 1 Seld. 320; *Gillett* v. *Fairchild,* 4 Denio, 80.

3. Dills and Dunham, two of the relator's directors, illegally and fraudulently used the name of the relator to enforce a private contract illegally and improperly made between them, on one side, and one Hervey on the other. *People* v. *Supervisors of Winchester,* 15 Barb. 608; *People* v. *Emmett,* 1 Caine, 8; *County of Pike* v. *State,* 11 Ill. 202; *People* v. *Illinois Central Railroad Co.* 62 id. 510.

4. Dills and Dunham, and not the relator, are the real parties in interest in this case, and they are fraudulently and illegally attempting to use the power of this court to carry out a contract fraudulently made by them with said Hervey, for the purpose of wronging and defrauding the relator and its shareholders, by enforcing a most iniquitous contract. We show up this whole contract in all its wastefulness, extravagance and illegality, together with its ruinous effect upon the company and its shareholders, the enormous cost of the property, and its value, and showing that, by these contracts they first made with Hervey, and then by him made

with these directors, five-sixths of the bonds, stock and debts of said relator have been wasted; that by the vote of the said Dills and Dunham, stock, to the amount of $2,000,000, was issued and delivered to said Hervey, without any valuable consideration therefor. Rev. Stat. 1874, p. 79, secs. 1 and 3, 804, sec. 22. *Canal Trustees* v. *The People,* 12 Ill. 248; *Gilman, Clinton and Springfield Railroad Co.* v. *Kelly,* 77 id. 426, and cases cited; *Am. Cent. Railroad Co.* v. *Miles,* 42 id. 177; *Gridley* v. *Lafayette, Bloomington and Mississippi Railway Co.* 71 id. 200.

5.  Dills and Dunham, being directors in relator's company, could not make a contract like this and enforce it against their own shareholders. Directors must deal honestly with the property intrusted to them, and can not enforce a contract wrongfully and illegally made with Hervey against their own shareholders. *Gilman, Clinton and Springfield Railroad Co.* v. *Kelly, supra; European and North Am. Railroad Co.* v. *Poor,* 59 Me. 277; *Paine* v. *Lake Erie and Louisville Railroad Co.* 31 Ind. 283; *Richards* v. *New Hampshire Ins. Co.* 43 N. H. 263; *Gaskill* v. *Chambers,* 26 Beav. 360; *Bedford Railroad Co.* v. *Bowser,* 48 Pa. St. 29; 13 Moak's English Rep. 757.

6.  No bonds of the town of Barnett should be issued or delivered to Dills and Dunham by these respondents, as they have no right to get the property. *United States* v. *Commission,* 5 Wall. U. S. 563; *Canal Trustees* v. *People,* 12 Ill. 248.

7.  No bonds should be issued or delivered to the relator, because it has no right to them, and has not applied for them, and can not be injured if bonds are not delivered. *People* v. *Regents of University,* 4 Mich. 98; High on Extraordinary Remedies, p. 321, sec. 450.

8.  By the law, petition and notice in said town of Barnett, a large discretion was given to respondents, both in relation to the length of time said bonds were to run, and the rate of interest they should bear, from their issue. Nor should re-

spondents be compelled to issue bonds, if they prefer to pay the money. *People* v. *Supervisor of Dutchess*, 1 Hill, 50. We think the peremptory writ was improvidently issued upon a concealed state of facts, not known to respondents, and improperly kept from this court by relator and said Dills and Dunham.

9. These respondents have shown good reasons why they should not comply with the order of this court made herein. *Silver* v. *People*, 45 Ill. 225; *Canal Trustees* v. *People, supra.*

Per CURIAM: On the 28th day of January, 1878, a peremptory writ of *mandamus* was issued from this court, in pursuance of its former award of such writ, (85 Ill. 313,) commanding the supervisor and town clerk of the township of Barnett, in the county of DeWitt, in the State of Illinois, forthwith to execute, in the name of said township, to the Illinois Midland Railway Company, or its order, bonds of said township to the amount of $30,000, payable within twenty years from the date thereof, with coupons attached, bearing ten per cent interest per annum, payable annually, in payment of a subscription for that amount to the capital stock of said railway company, theretofore voted by the legal voters of said township, which writ was returned by the sheriff of DeWitt county as served on the said supervisor and town clerk, by the delivery to them of a copy of the writ, on February 12, 1878.

On January ——, of the present term, on motion of the relator, service of the writ having been shown and non-obedience to its command, a rule was entered against the supervisor and town clerk, to show cause why an attachment for contempt should not issue against them for not obeying the command of the writ. In answer to this rule they appeared, on the 7th day of January, and filed their return to the peremptory writ of *mandamus*, and excuse for not obeying the same, in substance as follows:

That the service of the writ upon them was not good, it

being by delivery of a copy, and not the original; that they had learned, since the first hearing in this court on the return to the alternative writ first issued, that the bonds did not belong to the railway company, but to two of its directors, Dills and Dunham, to whom they had been requested to deliver the bonds; that the delivery of the bonds to Dills and Dunham would not be a compliance with the writ, or defence for not delivering them to the company; that they should not deliver the bonds to the company, because it has no right or property in them,—that it is insolvent and in the hands of a receiver; that if delivered to the company, then Dills and Dunham will not get them, and will not get the benefit of their contract with the company for the bonds; that Dills and Dunham, as such directors, and one Hervey, a director in the Peoria, Atlanta and Decatur Railroad Company, (one of the three companies which, by consolidation or purchase, became the Illinois Midland Railway Company,) had wrongful and fraudulent dealings with each other, through which, in violation of the rights of the town of Barnett and other stockholders in said railroad company, Dills and Dunham obtained a fraudulent contract for the construction of six miles of the railroad, through the town of Barnett, for a large sum of money, greatly above the cost of the work, a part whereof, $30,000, was to be paid to them in the bonds of the town of Barnett; that large profits were realized from the execution of the contract, which Dills and Dunham should account for as belonging to the railroad company, and that the bonds should not be delivered to them until they have so accounted and paid over such profits; that through their fraudulent dealings and management illegal purchases were made by the Peoria, Atlanta and Decatur Railroad Company of the Decatur and Paris railroad and the Paris and Terre Haute railroad, and that through such management the property of the company was rendered of no value; that the interest on the bonds should not be more than six per cent per annum, and that it should be left with the respondents to fix the time for which the bonds should run,

and that they should not be compelled to deliver the bonds until the relator tenders to the town of Barnett its certificate of stock; and that the suit of *mandamus* was prosecuted by Dills and Dunham for their benefit in the name of the relator, without its consent or procurement.

This return was adjudged not to be a sufficient answer to the rule, and an attachment was ordered to issue against Nathan M. Barnett, the supervisor, which was issued accordingly on the 13th day of January.

On the 22d day of January, the respondent being brought before the court upon the attachment, as the only answer thereto and justification of his conduct, filed his sworn statement, in writing, to the effect that he had not obeyed the peremptory writ of *mandamus* because a purported copy only was served on him without delivery of the original, and that his counsel informed him that such a service did not compel him to comply with the writ, stating, as before, that Dills and Dunham claimed the bonds, and had notified respondent to deliver the same to them, and that he was informed and believed their claim to the bonds was illegal, if not fraudulent, upon which he moved his discharge from the attachment.

The motion was overruled, and it was declared that no sufficient excuse had been shown for the disobedience to the writ of *mandamus*, and further time was given, until the 4th day of February, of the present term, to afford opportunity to comply with the command of the writ of *mandamus*. In the meantime, blank bonds, of the amount and description named in the writ, were prepared by the attorneys for the relator, and presented to the respondent for execution, which he declined to execute.

On the 4th day of February the respondent appeared, and, by his attorneys, filed his petition and declaration for a writ of *audita querela*. This is a well known writ of the ancient common law; but the modern practice of granting summary relief, upon motion, in cases for which the only remedy was formerly by *audita querela*, has occasioned this remedy now

to be rarely resorted to in England. We are not aware of any occasion of its having been resorted to in our practice; but without stopping to inquire whether or not there may be any case where, with us, this form of remedy might be adopted, we shall, for the present purpose, consider the subject matter of the application upon its merits, as cause for purging the alleged contempt, regardless of form as to the mode of presentation.

The petition and declaration filed upon this application contain, essentially, no more than a repetition of the matters set forth in the return made to the peremptory writ of *mandamus*, which we have already adjudged an insufficient excuse, but it may be proper to state the reasons therefor more at large than has heretofore been done.

Whether the service of the writ of *mandamus* was strictly correct or not, the defect has been waived by appearing and making return to the writ. *Regina* v. *B. and O. R. R. Co.* 16 Eng. L. and Eq. Rep. 94. There have been filed herein the written order of the relator, under its corporate seal, for the delivery of the bonds to Dills and Dunham, as also its receipt for the bonds, to be delivered upon the giving of the bonds to Dills and Dunham. The command of the writ is to deliver the bonds to relator, the Illinois Midland Railway Company, or its order. There is, then, no reason for embarrassment as to which of the parties the bonds should be delivered. A delivery to either would suffice, and may be done with safety to the town.

It appears that the bonds had been contracted to be paid by the company to Dills and Dunham, in part payment for their work in building and completing the construction of the railroad through the town of Barnett, and in such case Dills and Dunham would have implied authority to use the name of the railroad company in the prosecution of a suit against the town to compel the issuing of the bonds.

The only question for the respondents is, whether there be a legal duty on the part of the town to issue the bonds to the

railroad company; whether there is a legal right in the railroad company to have the bonds issued; and that has been determined against the town, and it is no concern of the town for whose use the suit may be prosecuted, or to whom the bonds may go after they shall have been issued. Dills and Dunham are not known in the suit, and any rights of theirs can not be made a subject of question in it.

The circumstance of the railroad, during the pendency of the *mandamus* proceeding, having gone into the hands of a receiver, does not abate the proceeding, nor furnish any obstacle—so long at least as the receiver makes no objection—to the suit going on to its termination, and the realization of its fruits, which would then form assets of the company, to be held and disposed of as its other assets, unless there be an adverse equitable claim of Dills and Dunham thereto. The corporation has not been dissolved by the road going into the hands of a receiver, but it remains in being, capable of suing and being sued.

As respects the alleged fraudulent and disastrous management of the affairs of the railroad company, to the prejudice of the interests of the stockholders, charged as having been participated in by Dills and Dunham while directors, if the same were a subject of litigation in this suit, it should have been brought forward and passed upon at some time before the final determination in the *mandamus* suit. If not known, as alleged, before the defence was made, it might have been known by the exercise of reasonable diligence, and so ought to have been known, and should be held as known. A portion of the same matter, at least that which respects the purchase of the Paris and Decatur and Paris and Terre Haute railroads, was before the court and passed upon in the opinion in 85 Ill. 313. But this matter was and is no proper subject of litigation in this *mandamus* suit.

This town of Barnett, in such a proceeding, has no right to demand that an accounting shall be had by Dills and Dunham in respect to alleged illegal profits they have made through

their management of the interests of the railroad company, and that, as is insisted upon, they shall first pay over to the company such profits before the bonds shall be issued. It is for the railroad company to require such an accounting for profits, if there be reason for it, and not this town, as a pre-requisite to the payment of its subscription. And that the stock of the company has been depreciated, or even destroyed in value, through the bad or fraudulent management of any of its officers, forms no defence to the non-payment of such subscription to the stock of the company. *Hays* v. *Ottawa, Oswego and Fox River Valley R. R. Co.* 61 Ill. 422; *Ottawa, Oswego and Fox River Valley R. R. Co.* v. *Black*, 79 Ill. 262; *The People* v. *Logan County*, 63 Ill. 387; 85 Ill. 313. In the first cited case, where a similar defence was set up against the payment of a subscription for stock, it was said: "When the plaintiff in error shall have paid his subscription and received his certificate of stock, he then will have equitable rights to be protected by the courts, and may prevent gross mismanagement of the property, and misapplication of the funds of the corporation; but the mere facts of leasing, and probable or even certain loss in the earnings of the company, constitute no defence to the note" (for subscription.) And in the case in 79 Ill., a similar case, it was said: "If the company had no power to lease the road and its franchises, then the lease is void, and appellees can, when they receive their stock, apply to a court of equity and have the lease canceled." And again: "The exercise of any legitimate power granted by the charter can never be held, however disastrous to the enterprise, to constitute a failure of consideration for a subscription to the capital stock."

· The objection as to the interest of the bonds, and the time they are to run, should have been presented and been determined before the issuing of the writ. It is too late now to go behind the writ and make such objection.

· The only objection made, as we regard, which savors of merit, and being substantial, is, that the bonds should not be

issued until the railroad company offers to deliver to the town its certificates of stock.

Had there been an offer made, or a willingness expressed to execute and deliver the bonds upon the receipt of the certificate of stock, and there had been anything of refusal to give such certificate of stock, we might be inclined to· hold the respondents excused, until it should appear that the company was ready and willing to give the certificate upon the delivery of the bonds. But there has been no offer made, or even willingness expressed, to deliver the bonds upon the receiving of the certificate, and from all that appears we can not but be satisfied that the objection that the company has not offered to deliver the stock is but a pretended and not a real ground of excuse, and we have no doubt that if an offer had been made to deliver the certificate of the stock upon the receipt of the bonds, the bonds would not have been delivered. In the opinion in the *mandamus* case it appears it was shown that there was a readiness on the part of the relator to deliver the certificate of stock upon the receipt of the bonds, and it was said that no more than that was required, and we must consider that such readiness still continues, until the contrary is made to appear.

Pending this present proceeding there has also been filed in the case a sworn statement of the supervisor, that the taxpayers of the town of Barnett have notified and requested him not to execute and deliver the bonds to said Dills and Dunham, nor to any person to be delivered to them or either of them. Also, there appears the following letter from the attorney of the supervisor to one of the attorneys of the relator:

*" Clinton, Ill., January* 23, 1879.

CAPT. ROWELL,

*Dear Sir:*—The town of Barnett have directed me to say to you that it never will issue and deliver to Dills and Dunham the $30,000 in bonds. If you have from your clients any proposition to make in regard to accepting a less amount,

28—91 ILL.

and give the town a receipt in full, I will take it and send it them.

                    Yours, etc.,                    C. H. MOORE."

The only proper return to a peremptory writ of *mandamus* is a certificate of compliance with its requisitions without further excuse or delay. Redf. on Railways, 441.

As we have once before declared, no sufficient reason has been shown for the refusal to execute the bonds.

The mandates of the writs of the courts of the State are to be obeyed. Where there is plain and defiant disobedience thereto, the outrage upon law must be punished, and the power of the court exercised to enforce obedience.

The judgment of the court, then, is, that Nathan M. Barnett, supervisor of the town of Barnett, make his fine to the people of the State of Illinois, in the sum of five hundred dollars, and that he be committed to the common jail of Sangamon county, and there remain until he shall obey the command of the peremptory writ of *mandamus* aforesaid, and until he shall pay the said fine and the costs of this proceeding.