THE NIANTIC SAVINGS BANK ET AL.

v.

THE TOWN OF DOUGLAS.

1. TOWNS—POWER TO MAKE DONATIONS—AMOUNT OF DONATION.—
When the legislature grants power to a township to make donations to rail-
roads and to issue bonds for the same, the grant of power is not invalid be-
cause it fails to provide means for determining the amount and terms of the
donation, or the amount of bonds to be issued, their terms and manner of
their execution.

2. CONSTRUCTION OF POWER.—Such a construction should be put upon
a statute, granting a power, as may best answer the intention which the
makers had in view; and, if possible, it should be so construed that no clause,
sentence or word shall be superfluous, void or insignificant.

3. CONSOLIDATION OF RAILROADS.—Under the laws of this State per-
mitting the consolidation of railroad companies, all the powers, rights,
franchises and immunities to which the several companies were entitled, pass
to the new or consolidated company. Such consolidation will not defeat a
donation made by a town to one of the companies so consolidated.

4. IRREGULARITIES IN ISSUING BONDS—BONA FIDE HOLDER.—Where a
town has authorized the issue of bonds, the signing of the bonds in blank,
and leaving them with others to hold until the conditions of the vote are com-
plied with by the railroad company, and afterwards filling up the blanks are
mere irregularities which cannot prejudice the rights of innocent holders of
the bonds.

APPEAL from the Circuit Court of Effingham county; the
Hon. J. C. ALLEN, Judge, presiding.   Opinion filed January
30, 1880.

Messrs. HAY, GREENE & LITTLER and Mr. W. B. COOPER, for
appellants; as to the right of a consolidated company to suc-
ceed to the rights and franchises of the respective companies
consolidated, cited County v. Thomas, 94 U. S. 682; County
v. Nicolay, 95 U. S. 619; County v. Barnes, 94 U. S. 72;
Robertson v. Rockford, 21 Ill. 457; Hayes v. O. O. & F. R. V.
R. R. Co. 61 Ill. 422;  O. O. & F. R. V. R. R. Co. v. Black,
79 Ill. 262;  Company·v. Town of Barnett, 85 Ill. 318; Town
of Pana v. Lippincott, 2 Bradwell, 466.

The bonds being signed in blank before the conditions of

the vote had been complied with, their issue might have been enjoined: Chiniquy v. The People, 78 Ill. 570.

But after being issued and passed to the hands of *bona fide* holders, they are valid obligations against the town; it is the mere defective execution of a power: Melvin v. Lisenby, 72 Ill. 63; McKee v. Vernon County, 3 Dillon, 210; Thayer v. County, 3 Dillon, 390; Lynd v. County, 16 Wall. 6; Weyannega v. Ayling, U. S. Sup. Ct. (not reported).

The town is estopped by recitals in the bonds: The People v. Brown, 67 Ill. 435; Lewis v. City of Clarendon, 7 Cent. Law Jour, 289; Casey v. Gally, 94 U. S. 680; Johnson v. County of Stark, 24 Ill. 85; Coloma v. Eaves, 92 U. S. 484.

Where a court of chancery obtains jurisdiction, it will retain it for all purposes: Sherlock v. Winnetka, 59 Ill. 389; Mason v. Piggott, 11 Ill. 85; Ross v. Buchanan, 13 Ill. 55.

As to the nature of a cross-bill: Kennedy v. Kennedy, 66 Ill. 190.

Messrs. PALMER, PALMER & Ross, and Messrs. WOOD BROS., for appellees; that recitals cannot be relied upon to prove the existence of a power to issue, cited Kennicott v. Supervisors, 16 Wall. 464.

Laws authorizing municipal corporations to donate aid to railroads are strictly construed: S. & I. S. E. R.R. Co. v. Cold Spring, 72 Ill. 603.

The consolidation revoked the power to donate and it could only be revived by a new vote: Dillon on Municipal Bonds, 41; Harshman v. Bates, 92 U. S. 569; Lewis v. Clonondon, 7 Cent. Law Jour. 288; Robertson v. Rockford, 21 Ill. 457; Hayes v. O. O. & F. R. V. R. R. Co. 61 Ill. 422; Black v. O. O. & F. R. V. R. R. Co. 79 Ill. 262; Henry v. Nicolay, 95 U. S. 626; County of Scotland v. Thomas, 3 Dillon, 7; County v. Barrett, 85 Ill. 318; Harshman v. Bates Co. 92 U. S. 574; Aspinwall v. Daviess Co. 22 How. 374.

A donation is a mere offer; there was no acceptance by the company, nor could there be until the condition was complied with: Town of Concord v. Savings Bank, 92 U. S. 630.

Donations are within the saving clause of the Constitution:

C. & I. R. R. Co. v. Pinckney, 74 Ill. 277; Middleport v. Ætna Life Ins. Co. 82 Ill. 562.

Town officers could not delegate their authority to sign the bonds to other persons: Jackson Co. v. Brush, 77 Ill. 59.

They could not issue the bonds after they were out of office: Laws 1869, 319; Town of Eagle v. Kohn, 84 Ill. 292.

Recitals protect only when made by an authorized officer: Dillon on Mun. Bonds, 50.

Laches or payment of taxes will not estop the town: Town of Pana v. Lippincott, 2 Bradwell, 466.

Davis, P. J.  This was a bill in chancery filed by appellees against appellants to cancel certain bonds issued by the Town of Douglas.  The Bloomington and Ohio River Railroad Company was incorporated by the Legislature of Illinois in 1869.  Private Laws of 1869, Vol. 2, page 947.

The only sections of the act which have a bearing on the questions involved in this case, are the following:

"Section 8.  The several counties, cities, villages, incorporated towns, and the several townships in counties having township organization, through or near which the said road shall be located, are hereby authorized to raise money, by a tax to be levied upon all the real and personal property in the said several counties, cities, villages, incorporated towns and townships, and to subscribe the same to the capital stock of said corporation hereby created, for the purpose of aiding in the construction and completion of said road; and the said several counties, cities, villages, incorporated towns and townships as aforesaid, are further authorized to issue bonds, drawing interest at the rate of ten per cent. per annum; which said bonds shall be negotiable and payable in the city of New York in not less than one nor more than ten years after the date of the same; provided, that no subscription shall be made, or no tax shall be levied, until the same shall be voted for as hereinafter provided.

"Section 9.  Whenever twenty-five voters of any such county, city, village, town or township shall make a written application to the county clerk of such county, or twenty-five voters

of any such city, incorporated village or town or township shall make such application to the clerk thereof, requiring an election by the legal voters of such county, city, village, town or township to determine whether such subscription shall be made and such tax levied, specifying in such application the amount, such clerk shall file such application in his office and immediately give the notice, as required by law, for an election to be held by the legal voters of such county, city, village, town or township, at the usual places for holding elections; such notice to be given at least thirty days prior to the day of holding such election, and such election shall be held and conducted in all respects and the return thereof made as in case of annual elections.

"Section 10. If the majority of voters voting at such election shall be in favor of such subscription and tax for the payment thereof, then such county, city, incorporated village, town or township, by its proper corporate authority, shall levy such tax and subscribe to such corporation the amount thereof, to be determined or voted for at any such election, and shall issue to said corporation their bonds for such amount drawing ten per cent. interest per annum, and payable in not less than one year, nor more than ten years. The said bonds when issued are to be irrevocable and negotiable and payable as in section 8 as aforesaid.

"Section 11. If any county, city, village, town or township, shall subscribe to said capital stock under the provisions of this act, and shall issue their bonds, said bonds shall be in full payment of their said subscription, and the supervisor of said township or county court of such county and the corporate authority of such city, village or town, shall annually appoint some suitable person to represent and vote upon the stock so subscribed and levied as aforesaid.

"Section 13. Said company shall have power to unite its railroad, in whole or in part, with any other railroad or railroads now constructed in this State, coming in contact therewith, and to grant to any such company or companies the right to use the whole or any portion of said line of road hereby authorized to be constructed, upon such terms as may be

mutually agreed between the said company or companies.

"SECTION 19. The several counties, cities, villages, incorporated towns and the several towns or townships in counties having township organization, through or near which said railroad shall be located, are hereby empowered to make donations and to issue bonds for the same in the manner hereinbefore provided, to said railroad for the construction and completion of the same."

The record shows that on the 15th of October, 1869, a petition for an election was filed in the town clerk's office of the town of Douglas, requesting the calling of an election to determine the question of donating $50,000 to said railroad company and issuing bonds therefor, and on the 24th of November following, an election was held in pursuance of the call of the clerk issued under said petition, and the question was submitted as requested by the petitioners, and 207 votes were cast for and 54 votes against such donation. And the condition of the vote was that such bonds should be issued "when the said railroad was completed and ready for the cars from the city of Effingham to the north boundary line of said county."

On March 22, 1872, and prior to the completion of the road, the Bloomington and Ohio River Railroad Company consolidated with the Fairbury, Pontiac and Northwestern Railroad Company, forming a new corporation called the Chicago and Paducah Railroad Company.

On June 12, 1872, the $50,000 bonds in controversy were signed by Nolte, then supervisor, and Goodell, clerk of the town of Douglas, and were made payable to the Bloomington and Ohio River Railroad Company or bearer. The dates of the bonds, the time of their maturity and the time when interest should commence to run were left blank. The time of the maturity of the coupons was also unfilled. The bonds and coupons were sent to Winslow, Lanier & Co., of New York city, to be held in escrow and delivered to the company when the condition upon which they had been voted were complied with.

Winslow, Lanier & Co. having refused to hold them in escrow, the bonds and coupons were returned in 1874 to Jansen,

who was serving his second term as supervisor, the term of Nolte and Goodell having before that time expired.    On June 6, 1874, Jansen delivered the bonds in the same condition as when sent to Winslow, Lanier & Co. to the Farmers' Loan and Trust Company of New York, and received a receipt to the effect that it had received them to be held in escrow, to be delivered to the Bloomington and Ohio River Railroad Company or its contractor, or to Anthony Thornton, trustee, when the conditions were complied with.    In 1875 Jansen delivered the receipt to Judge Thornton, who sent for and obtained the bonds.

The road was completed in accordance with the terms of the condition of the vote prior to February 11, 1876, and on that day the said blanks in the bonds and coupons having been filled under the directions of Judge Thornton as authorized by supervisor Jansen, the bonds were delivered.    On the same day Jansen, as supervisor of the town, made and subscribed an affidavit, that the bonds had been issued in pursuance of the law under which they were authorized, and in accordance with the terms upon which they were voted and also in accordance with the requirements of the law of 1869.

Appellees claim that the town of Douglas did not possess the power to issue and donate its bonds.

It was evidently the original design of the framers of the act, in which the foregoing sections appear, to grant power only to the townships through or near which the road in question might be located, to raise money by a tax to be levied on real and personal property, and subscribe the same to the capital stock of the corporation created by the act.    But that design was changed by amendment or otherwise, so that such townships might, in lieu of raising money by taxation to pay for such subscriptions, subscribe to such capital stock and issue bonds in payment of the same; and further, that in lieu of subscribing to the capital stock of such corporation, such townships might make donations and issue bonds for the same. Appellees insist " that the nineteenth section by its own terms, or when construed in connection with the preceding parts of the act, is not sufficient to authorize the township of Douglas to

make donations in aid of the projected railroad, or to issue its bonds for that purpose." While conceding that the general terms employed in the section seem to confer upon townships the power claimed, they insist " that such power does not exist, because the section provides no means for determining the amount or terms of the donation, nor the amount of the bonds, their terms, nor for the manner of their execution, and that the section is not aided by the reference it contains to the preceding portions of the act."

It is true that the section is silent in these particulars, but we do not think it follows, even in the case of townships under the township organization law, that such provisions are essential to the valid exercise of the general authority conferred by the act as claimed by appellees. We know of no law or decision holding, that when the legislature grants the power to a township to make donations and to issue bonds for the same, that the grant of power is invalid unless it provides means for determining the amount and terms of the donation, the amount of the bonds, their terms and the manner of their execution. If the general power to make donations and issue bonds also is given, it is left to the people who vote such donations, and who must ultimately pay them to determine the amount they will donate and the terms of the donation, and the amount and terms of the bonds which shall be issued by the proper authority to pay such donations.

Many difficulties appear to arise in the minds of appellees in construing the several sections of the statute involved in the controversy, but these difficulties on examination appear more imaginary than real.

Such a construction should be put upon a statute as may best answer the intention which the makers had in view, and it should be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant. Decker et al. v. Hughes et al. 68 Ill. 33.

It was manifestly the intention of the legislature, by the passage of the law, to give power to townships to aid the railroad company incorporated by the act, in the construction and completion of its road, in one of three ways.

First. Under section eight, by raising money by a tax to be levied, and subscribing the same to the capital stock of the company.

Second. By subscribing to the capital stock and issuing bonds in full payment of said subscription, under the provisions of sections 8, 10 and 11.

Third. By making a donation and issuing bonds for the same, under the provisions of section 19.

If the township elected to adopt the first mode, it was necessary, under sections 8 and 9, for the legal voters of the township to vote for such subscription and levy of tax, and under section 10 for the corporate authorities of the township to levy such tax and subscribe to the stock of the corporation.

If it determined to adopt the second mode, it was necessary, under sections 8 and 9, for the legal voters to vote for such subscription; and under sections 10 and 11, for the corporate authorities of the township to subscribe to such stock and issue their bonds in full payment of such subscription.

Or, if the township preferred to adopt the third mode, it was necessary, under section 19 and also under sections 8 and 9, for the legal voters to vote for such donation; and under sections 10, 11 and 19, for the corporate authorities of the township to issue their bonds in full payment of such donation.

If the township should determine to adopt either the second or third modes above indicated, it would be unnecessary to vote for a tax, because, by section 11, if bonds should be issued they would be in full payment of the subscription or donation. We do not agree with appellee that the levy of a tax is made by the act a precedent condition to the authority of the township to subscribe to the capital stock of the company or to issue bonds, and that it is essential to the existence of the power that a tax be levied. Keeping in view the fact that the legislature gave power to townships to give aid to the railroad company incorporated, in one of three ways, and also the rule of construction that a statute should be construed so as to best answer the intention which the makers of it had in view, we must conclude that the legislature intended there should be

Niantic Savings Bank v. Town of Douglas.

but one payment of the subscription or donation voted in aid of the road, and that the adoption of either one of the two modes of payment prescribed, that is, by the money raised by taxation, or by the issue of bonds, should annul whatever might be requisite if the other mode should be adopted.

It was evidently not the intention that if the money raised by taxation should be paid, that bonds should also be issued; or if bonds were paid, that money should be raised by taxation. Sections 8 and 10 provide that bonds might be issued payable in not more than ten years; and section 11 provides that when bonds were issued, the bonds should be in full payment of the subscription. The ridiculous act of levying a tax ten years before the money should be required to pay the bonds, was not contemplated by the legislature.

. It is also claimed by appellees, that the bonds are void because no power was given by the act to vote for a donation, and that the words "in the manner hereinbefore provided," used in section 19 in connection with the power to make donations and to issue bonds for the same, "should be considered as merely directing the manner of the issue of the bonds, that is, that they should draw interest at the rate of ten per centum, and be payable in the city of New York in not less than one nor more than ten years from date."

We cannot give these words so limited a construction. The rule of construction that a statute should be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant, comes to our aid. Section 19, conferring power to make donations and to issue bonds for the same, would be void and fail in the accomplishment of the very object intended, unless the words "in the manner hereinbefore provided" referred to preceding portions of the statute which, in contemplation of the legislature, conferred the power to vote.

Section 9 provides for an election to determine whether a subscription should be made to the capital stock of the company.

Section 10 provides that if the vote should be in favor of a subscription, the township, by its proper corporate authority,

should make such subscription for the amount voted for, and (in case the second mode should be adopted, of aiding the road by a subscription and payment in bonds) issue to said corporation its bonds for the amount voted for, which bonds, as provided in section 11, should be in full payment of the subscription voted for. Here these bonds could not be issued without a previous vote upon the question of the subscription, because section 8 provides that no subscription shall be made until the same shall be voted for as provided. And section 19 provides that the several townships are empowered to make donations and to issue bonds for the same in the manner hereinbefore provided.

This power to make donations is evidently in lieu of the power to make subscriptions, and the making of the donation and the issuing of the bonds for the same, in the manner hereinbefore provided, should be construed as requiring the same steps to be taken in the case of donations as in the case of subscriptions. In this case all the steps required to be taken in making a subscription were taken in voting the donation of $50,000, and the issue of bonds therefor. We think the township had the power to vote for, and make the donation, and to issue its bonds in payment of the same.

It is also claimed by appellees that the bonds in controversy are void, because the consolidation of the Bloomington and Ohio River Railroad Company with the Fairbury, Pontiac and North Western Railroad Company operated as a complete extinction of the former company to which the aid had been voted.

Section 13 of the act incorporating the former company, authorized such a consolidation, and the general law then in force also gave power to railroad companies to consolidate their roads; under which laws, all the powers, rights, franchises, and immunities to which the old companies were entitled passed to the new or consolidated company. At the time of voting the donation, the act incorporating the old company; and also the general law, were in force, and the subsequent exercise of the power given by law in consolidating the roads will not defeat the donation. Ill. Midland Railway Co. v.

Town of Barrett, 85 Ill. 313; Town of Pana, v. Lippincott, 2 Bradwell, 466.

We fail to see the distinction between a subscription and a donation, claimed by appellee. When a valid donation is voted under power given to a township, the liability of the township becomes fixed as much as when a subscription is made. The donation is as much relied upon as the subscription, and it gives credit to the company to which it is voted upon which contracts are made and liabilities are created. The townships would have no more power to withdraw the one than the other, we see no reason why one should not pass by a consolidation as well as the other.

It is also contended that the bonds issued are void, because they were signed in blank by Nolte, supervisor, and Goodell, clerk, who were not officers of the township when the blanks were filled and the bonds delivered. It appears, however, that afterwards these bonds were returned to the control of Jansen, the supervisor of the township, and under his authority the blanks were filled and the bonds registered and issued. It is stipulated in this case that appellants are *bona fide* purchasers for a valuable consideration, without notice of any matters of irregularity or voidability other than arises from presumptions of law. Even if the township did not ratify the acts of Nolte and Goodell, or if the act of supervisor Jansen in authorizing the filling of the blanks in the bonds and coupons was not regular, yet when the town had authorized the issue of the bonds, the signing the bonds in blank and leaving them with other parties to hold until the conditions of the vote were complied with, and afterwards filling up the blanks were, as we conceive, mere irregularities, which could not prejudice the rights of innocent holders of the bonds. In Burr et al. v. City of Carbondale, 76 Ill. 469, it was held, that if a municipal corporation authorized by law issue its bonds in furtherance of a corporate purpose and in substantial compliance with the law authorizing their issue, and such bonds come into the hands of an innocent holder, even if there be irregularities not going to the power, the bonds must be held valid.

The only remaining objection which we deem necessary to

notice, is that the bonds were not issued by the proper corporate authority of the town. It is not definitely determined what officers constitute the corporate authority of a town, nor is it necessary in this case to decide that question. The legislature gave the power to the township to make the donation and issue the bonds in controversy. The bonds were registered and finally issued under the sanction of the supervisor of the town, and passed into the hands of innocent purchasers without notice. The town has received all the benefits promised by the corporation to which the donation was made. The town cannot now come into a court of equity to ask its assistance in the accomplishment of an inequitable act, or to lend its aid to enable the town to escape the payment of a just debt on such technical grounds. Melvin et al. v. Lesenby et al. 72 Ill. 63.

The court below having decreed the bonds illegal, null and void, and enjoined the payment of them, the decree must be reversed.

Decree reversed, injunction dissolved and bill dismissed.