Hodgman v. The Chicago and St. Paul Railway Company.

JESSE M. HODGMAN

*vs.*

THE CHICAGO AND ST. PAUL RAILWAY COMPANY, impleaded with the city of Red Wing, and others.

Where he has no adequate remedy at law, a tax-paying property holder has a right, in his own name, to resort to equity to restrain by injunction a municipal corporation and its officers from illegally creating debts which will increase his burden of taxation.

By *chap. 35, Special Laws* 1869, the city of Red Wing is authorized to issue its bonds to aid in the construction of the St. Paul & Chicago Railway. By *section 3* of said chapter, it is provided that the city council of Red Wing are authorized "to enter into any agreement with any company or corporation having the control of and the right to construct such railway, in relation to the time, times, [terms] and conditions of such bonds and of the issuing of the same, and may by ordinance provide for the issuing of such bonds, specifying therein the time, terms and conditions thereof as so agreed upon. * * *Provided,* * * that no such agreement or ordinance shall take effect and be in force until such ordinance specifying the time, terms, and conditions of said bonds so to be issued shall have been submitted for approval to the qualified voters of said city as hereinafter provided."

*Held,* that the agreement was to precede the submission of the ordinance, and that a submission of an ordinance before such agreement was entered into was void, and did not stand in the way of the submission of a second ordinance on the same subject subsequent to an agreement of the kind mentioned.

Under the provisions of *section* 3, an agreement was entered into between the city council and the St. P. & Chic. Railway Co. (the defendant,) providing for the issue of bonds by said city to said company; and, among other things, providing that "no such bonds shall be issued unless said railway shall be fully constructed, equipped and put into successful operation for the transit of freight and passengers from said St. Paul to said Red Wing, on or before the first day of January, A. D. 1871."

An ordinance containing the same provision was properly submitted

Hodgman v. The Chicago and St. Paul Railway Company.

to, and approved by, the legal voters of the city of Red Wing. The complaint contains the following allegations which stand admitted by the demurrer, viz. : " Said plaintiff further says that said bonds have been submitted to the city attorney of said city, for his examination, under the above resolution, and that he has informed this plaintiff that he finds said bonds without objection in form, and that he shall so prepare his opinion in the premises, and file the same with the city recorder at an early day.

" Said plaintiff further says that he admits that said Saint Paul and Chicago Railway Company has now completed its railroad from said city of Saint Paul to said city of Winona, and has fully equipped the same, and that it has thereby afforded, and does now afford, complete railroad transportation of freight and passengers from said city of Saint Paul, by the way of Red Wing, to Winona, and thence, by railroad connection, to the cities of Milwaukee and Chicago; and that said railway company has, in all things, kept and performed, fulfilled and complied with the terms, conditions, and provisions of said contract of May eighth, A. D. 1869, and of said ordinance No. 47, by it to be kept, fulfilled and complied with, except as hereinafter stated. Said plaintiff further says that the city of Saint Paul aforesaid is situated on the east bank, and the cities of Hastings, Red Wing, and Winona are respectively situated on the west bank of the Mississippi river; that said railroad of said railway company was surveyed, established and more recently constructed, crossing said Mississippi river at said city of Hastings, and that to a continuous railroad upon said route, from St Paul aforesaid to Red Wing aforesaid, for the transportation of passengers or freight, a bridge over and across said river, was and is indispensable.

" Said plaintiff further says, that on and prior to the first day of January, A. D. 1871, said St. Paul & Chicago Railway had completed and equipped, and had in successful operation, its said railroad, for the transportation of passengers and freight thereon, from the city of Saint Paul aforesaid, to a point opposite the city of Hastings, on the east bank of the river aforesaid, and about three-fourths of a mile distant from the east bank of said river, at low water, and from the west bank of said river, in said city of Hastings, to the said city of Red Wing; but said plaintiff denies that in any other way, or in any other form, or to any greater extent, said Saint Paul and Chicago Railway Company constructed or equipped its said railroad from St. Paul aforesaid to Red Wing aforesaid, on or before January first, A. D. 1871; and he denies that said railway company, on or before the first day of January, A. D.

Hodgman v. The Chicago and St. Paul Railway Company.

1871, constructed its said road, or equipped the same, or put the same into successful operation for the transit of freight or passengers, from Saint Paul aforesaid to Red Wing aforesaid. On the contrary thereof, said plaintiff avers that, on and before said first day of January, A. D. 1871, there was, and up to a date subsequent to the first day of December, A. D. 1871, there continuously has been, a break in, and an unfinished section of, said road, at and opposite said city of Hastings, of not less than one mile in extent, about one-third of which distance consists of the Mississippi river, at an ordinary stage of water, and the balance of bottom lands; and that no bridge across the river, nor railroad track across said section of bottom land, was ever constructed or completed for the transit of freight or passengers thereon, until subsequent to the first day of December, A. D. 1871. And he avers that no train for either freight or passengers ever passed over said railroad, from St. Paul aforesaid to Red Wing aforesaid; nor was said railroad ever constructed so as to permit the same to be done, until on or about the fifteenth day of December, A. D. 1871, prior to which time all passengers traveling by and upon said railroad of said Saint Paul and Chicago Railway Company, from Red Wing to Saint Paul, or Saint Paul to Red Wing, were compelled to, and did, cross the Mississippi river at the point aforesaid, upon ferry boats, during the season of navigation thereon, and when said river was closed, upon sleighs, wagons, and other vehicles; and that, during all the time and period aforesaid, freight between those points upon said railroad was necessarily in like manner transported over the gap or break aforesaid; all of which necessarily caused delay and discomfort to passengers, and like delay in the transit of freight, and added to and increased the fare for passengers and the charges upon freight, and substantially prevented the transportation of all freight between those points upon said railroad until the day and year last aforesaid."

The complaint further states, that the city council of Red Wing have adopted a resolution in which, after reciting in a preamble that the council are of opinion that the bonds should be issued, the mayor and recorder are directed to issue and deliver the same to the railway company (the defendant,) upon the approval of the form thereof by the city attorney.

*Held*, that it is not competent for the city council to waive or alter the time, terms, or conditions of the issuance of the bonds as prescribed in the agreement and ordinance.

*Held further*, that the allegations of the complaint show a failure upon

Hodgman v. The Chicago and St. Paul Railway Company.

the part of the railway company to fully construct and equip the said railway, and put the same into successful operation for the transit of freight and passengers from St. Paul to Red Wing, on or before the first day of January, A. D. 1871, according to the requirement of the agreement and ordinance, and that on account of such failure it is not entitled to the bonds.

In this case, which is an appeal by the defendant (the railroad company,) from an order of the district court for Goodhue county overruling its general demurrer to the complaint, the opinion states the nature of the action, and the allegations of the complaint, or such portions as are material to an understanding of the points presented and discussed, and a further statement is unnecessary.

BIGELOW, FLANDRAU & CLARK, for Appellant.

I. This action is brought to restrain the issuance by the city of Red Wing of certain bonds agreed by said city to be issued, in aid of the above named appellant, in the construction of its railway.     *     *     *     The complaint shows that the plaintiff sues as a resident and tax payer of the city of Red Wing, and in no other capacity, and as representing no interest except his own. He shows that the issuance of the bonds will impose upon his property, in common with all other property of the city, a certain amount of tax, and this is the only grievance that he complains of. It is one shared in common with all other tax payers of the city. He shows also that there is not, nor will there be, any special damage peculiar to him or his property resulting from the issuance of the bonds.

We contend that under this state of facts the plaintiff cannot maintain this bill or action. That to authorize a private individual to maintain an action against the authorities of a city

or any municipal organization in the exercise of its public governmental functions for an illegal exercise of power, he must show that the alleged unlawful act will inflict upon him or his property some damage special to himself or his property, which is not shared by other citizens.  *Conklin v. Co. Comm'rs Fillmore Co.*, 13 *Minn.* 454 ; *Dawson v. The St. P. Fire & Marine Ins. Co.*, 15 *Minn.* 136 ; *Smith v. Boston*, 7 *Cush.* 254 ; *City of Georgetown v. Alex. Canal Co.*, 12 *Peters*, 91 ; *Anonymous*, 3 *Atk.* 750 ; *Bigelow v. Hartford Bridge Co.*, 14 *Conn.* 565 ; *O'Brien v. R. R.*, 17 *Conn.* 372 ; *Hale v. Cushman*, 6 *Met.* 425 ; *Doolittle v. Supervisors of Broome Co.*, 18 *N. Y.* 155 ; *Dillon on Mun. Corp.*, sec. 735 ; *Roosevelt v. Draper*, 23 *N. Y.* 318 ; *Ketchum v. Buffalo*, 14 *N. Y.* 356 ; 6 *John. Ch.* 439 ; 2 *John. Ch.* 320, *Opinion*, 336 ; *Grim v. Dixon*, 9 *How.* 10 ; *Penn. v. Wheeling Bridge*, 13 *How.* 518 ; *Reynolds v. New York*, 8 *Barb.* 597 ; *Weet v. Rockport*, 161 ; *Messick v. Columbia Co.*, 50 *Barb.* 190.

II.  The bill in the case presents no equities.  The plaintiff has an adequate remedy at law.  *Scribner v. Allen et al.*, 12 *Minn.* 148; *Burnes v. Mayor, &c.*, 2 *Kansas*, 454.

\*          \*          \*          \*          \*          \*          \*


E. T. WILDER and J. C. McCLURE, for Respondent.


*By the Court.*—BERRY, J.—This action is brought to restrain the authorities of the city of Red Wing from issuing, and the appellant from receiving certain bonds of said city.  The appellant claims that it is entitled to the bonds (in amount $85,000,) under an agreement and ordinance of said city, entered into and adopted in pursuance of an act of the legislature authorizing the same to be issued in aid of the construction of appellant's railway.  The complaint alleges that the plaintiff is a resident of said Red Wing, and owner of certain described real estate situate therein of the value of

more than $15,000, and of certain personal property of the value of more than $19,000 ; that said city has no authority to issue, nor the appellant any right to receive, the bonds aforesaid, and that if the same are issued (as threatened,) they will become a debt against the city, for the payment of which the plaintiff's property will be yearly subject to taxation ; that his property will depreciate in value ; that the taxes levied will become an apparent incumbrance, lien, and cloud upon his title ; that he will be thereby subjected to a multiplicity of actions for the protection of his rights, and that he will be greatly injured and embarrassed in the use and enjoyment of his property ; will be put to much expense, etc., etc.

The appellant demurs to the complaint upon the ground that it does not state facts constituting a cause of action.

I.  In support of the demurrer it is urged, first, that the plaintiff cannot maintain this action because his complaint only " shows that the issuance of the bonds will impose upon his property, in common with all other property of the city, a certain amount of tax, and this is the only grievance that he complains of.  It is one shared in common with all other tax payers of the city.  He shows also, that there is not, nor will there be, any special damage peculiar to him or his property resulting from the issuance of the bonds.    *    *
That to authorize a private individual to maintain an action against the authorities of a city or any municipal organization in the exercise of its public governmental functions for an illegal exercise of power, he must show that the alleged unlawful act will inflict upon him or his property some damage special to himself or his property, which is not shared by other citizens."

It is claimed that this point has been decided and established by this court in *Conklin vs. the County Com'rs of Fillmore Co.*, 13 *Minn.* 454 ; and *Dawson vs. St. Paul Fire and Marine Ins. Co.*, 15 *Minn.* 136.  Both of these were cases in

Hodgman v. The Chicago and St. Paul Railway Company.

which neither the property nor the private rights of the plaintiffs in the actions were claimed to be affected by that against which relief was sought. And a like remark is applicable to most, if not all, the cases cited by the appellant, with the exception of *Roosevelt vs. Draper*, 23 *N. Y.* 318, and some other New York cases. The case at bar is one in which the plaintiff seeks to restrain the issue of municipal bonds presumably negotiable, as is usual in such cases, and therefore valid in the hands of any *bona fide* purchaser, since they are to be issued by a municipal corporation whose general authority to issue the same upon the fulfillment of certain conditions, is unquestioned. *Lexington vs. Butler*, 14 *Wallace*, 296. It will be obvious, then, that the plaintiff, as the owner of taxable property and a tax payer, is remediless in the premises unless the issuance of the bonds can be arrested, since, if once in the hands of a *bona fide* purchaser, they are the evidence of a debt against which the city has no defense, and to the payment of which the plaintiff, as a tax payer, must contribute without any opportunity of successful resistance, or hope of subsequent reimbursement. Not to go further than this case requires, we are of opinion, that where he has no adequate remedy at law, a tax paying property holder has a right, in his own name, to resort to equity to restrain by injunction a municipal corporation and its officers from illegally creating debts which will increase his burden of taxation.

The damages which he will sustain in case his burdens of taxation are thus increased, are not in common with the damages to other tax payers, but they are *special*, affecting his private property and private rights. 2 *Dillon, Munic. Corp.*, § 731, *et seq., and cases cited ; High on Injunctions*, § 794 ; *New London vs. Brainard, et al.*, 22 *Conn.* 552 ; *Webster vs. Harwinton*, 32 *Conn.* 131; *Mayor, etc., vs. Gill*, 31 *Md.* 395 ; *Merrill*

*vs. Plainfield*, 45 *N. H.* 134 ;—19 *N. H.* 180; *Harnay vs. Indianapolis, &c., R. R.*, 32 *Ind.* 244.

II.  As to the appellant's second point, viz.: that the complaint presents no equities, since the plaintiff has an adequate remedy at law, we need add nothing to what is already said.

III.  By *chap.* 35 *Sp. Laws*, 1869, the city of Red Wing is authorized to issue its bonds to aid in the construction of appellant's railway ; and by *section* 3 of said chapter, it is provided as follows, viz.: " Sec. 3.  The city council of said city of Red Wing are hereby authorized and empowered to enter into any agreement with any company or corporation having the control of and the right to construct such railway in relation to the time, times and conditions of such bonds and of the issuing of the same, and may by ordinance provide for the issuing of such bonds, specifying therein the time, terms and conditions thereof so agreed upon.  *Provided*, That no such agreement shall be repugnant to any of the provisions of this act.  *And provided further*, That no such agreement or ordinance shall take effect and be in force until such ordinance specifying the time, terms and conditions of said bonds so to be issued shall have been submitted for approval to the qualified voters of said city as hereinafter provided."  An agreement was accordingly entered into containing the following provision, viz.: " It is mutually understood by and between the parties hereto, that no portion of said bonds shall be issued until said railway shall have been fully constructed, equipped and put into successful operation for the transit of freight and passengers from the city of St. Paul, in the State of Minnesota, to the city of Winona, in said state, or to some point south of Red Wing, connecting with some railway so as to afford in conjunction therewith and with other railways, direct railway transportation with Milwaukee and Chicago, and said bonds when so issued shall each bear date subsequent

to the completion as above expressed of said railway, and that no such bonds shall be issued unless said railway shall be fully constructed, equipped and put into successful operation for the transit of freight and passengers from said Saint Paul to said Red Wing, on or before the first day of January, A. D. eighteen hundred and seventy-one." * * An ordinance containing the same provisions was properly submitted to and approved by the legal voters of the city. The complaint contains the following allegations, viz.: "Said plaintiff further says that he admits that said Saint Paul and Chicago Railway Company has now completed its railroad from said city of Saint Paul to said city of Winona, and has fully equipped the same, and that it has thereby afforded, and does now afford, complete railroad transportation of freight and passengers from said city of Saint Paul, by the way of Red Wing, to Winona, and thence, by railroad connection, to the cities of Milwaukee and Chicago; and that said railway company has, in all things, kept and performed, fulfilled and complied with the terms, conditions and provisions of said contract of May eighth, A. D. 1869, and of said ordinance, No. 47, by it to be kept, fulfilled and complied with, except as here-inafter stated. Said plaintiff further says that the city of Saint Paul aforesaid is situated on the east bank, and the cities of Hastings, Red Wing, and Winona are respectively situated on the west bank of the Mississippi river; that said railroad of said railway company was surveyed, established and more recently constructed, crossing said Mississippi river at said city of Hastings, and that to a continuous railroad upon said route, from Saint Paul aforesaid to Red Wing aforesaid, for the transportation of passengers or freight, a bridge over and across said river, was and is indispensable.

"Said plaintiff further says, that on and prior to the first day of January, A. D. 1871, said St. Paul and Chicago Rail-

Hodgman v. The Chicago and St. Paul Railway Company.

way had completed and equipped, and had in successful oper-
ation, its said railroad, for the transportation of passengers
and freight thereon, from the city of Saint Paul aforesaid, to
a point opposite the city of Hastings, on the east bank of
the river aforesaid, and about three-fourths of a mile distant
from the east bank of said river, at low water, and from the
west bank of said river, in said city of Hastings, to said city
of Red Wing; but said plaintiff denies that in any other way,
or in any other form, or to any greater extent, said St. Paul
and Chicago Railway Company constructed or equipped its
said railroad from St. Paul aforesaid to Red Wing aforesaid,
on or before January first, A. D. 1871; and he denies that
said railway company, on or before the first day of January,
A. D. 1871, constructed its said road, or equipped the same,
or put the same into successful operation for the transit of
freight or passengers, from Saint Paul aforesaid to Red Wing
aforesaid. On the contrary thereof, said plaintiff avers that,
on and before said first day of January, A. D. 1871, there was
and up to a date subsequent to the first day of December,
A. D. 1871, there continuously has been, a break in and an un-
finished section of said road, at and opposite said city of
Hastings, of not less than one mile in extent, about one-third
of which distance consists of the Mississippi river, at an
ordinary stage of water, and the balance of bottom lands; and
that no bridge across the river, nor railroad track across said
section of bottom land, was ever constructed or completed
for the transit of freight or passengers thereon, until subse-
quent to the first day of December, A. D. 1871. And he
avers that no train for either freight or passengers ever passed
over said railroad, from Saint Paul aforesaid to Red Wing
aforesaid; nor was said railroad ever constructed so as to
permit the same to be done, until on or about the fifteenth
day of December, A D. 1871, prior to which time all passen-

gers traveling by and upon said railroad of said St. Paul and Chicago Railway Company, from Red Wing to St. Paul, or St. Paul to Red Wing, were compelled to, and did, cross the Mississippi river at the point aforesaid, upon ferry boats, during the season of navigation thereon, and when said river was closed, upon sleighs, wagons and other vehicles; and that, during all the time and period aforesaid, freight between those points upon said railroad was necessarily in like manner transported over the gap or break aforesaid; all of which necessarily caused delay and discomfort to passengers, and like delay in the transit of freight, and added to and increased the fare for passengers and the charges upon freight, and substantially prevented the transportation of all freight between those points upon said railroad until the day and year last aforesaid."

In answer to the plaintiff's claim thus set up, that the appellant has not complied with the conditions of the agreement, and ordinances as to constructing, equipping, and putting into operation its road from St. Paul to Red Wing on or before January 1st, 1871, the plaintiff claims that the city authorities of Red Wing and the appellant—the parties to the agreement and ordinance—" have agreed that the road was completed in accordance with the terms and conditions of the contract and ordinance, and the plaintiff cannot dispute it." This position is based upon the fact that the city council have adopted a resolution in which, after reciting in a preamble that " the council is of opinion that the bonds should be issued," the mayor and recorder are directed to issue and deliver the same to appellant upon the approval of the form thereof by the city attorney. It is a sufficient answer to this position to refer to *section* 3 (before quoted,) of the law by which the issue of the bonds was authorized.

In requiring that the time, terms, and conditions of the

Hodgman v. The Chicago and St. Paul Railway Company.

agreement between the city council and the appellant should be submitted to the legal voters of the city in the form of an ordinance for their approval or disapproval, and that only upon their approval thereof should either agreement or ordinance have any effect or force, it never could have been contemplated that such time, terms, or conditions should be the subject of waiver or alteration on the part of the city council. The bonds were to be permitted to be issued *only* upon the deliberate sanction of the legal voters, of the time, terms, and conditions of issuance as expressed in the ordinance and agreement. The entire authority to issue them depended upon the consent of the legal voters not only to the issuance, but to the *time, terms,* and *conditions* of issuance. It would be sheer trifling to treat this sanction and this consent as idle forms, of no importance whatever, by permitting the city officers—the mere servants of the legal voters—to disregard the same in any substantial respect, and to disobey the instructions which they were by law bound to receive and, of consequence, to obey.

IV. But it is further urged by the appellant that the complaint shows that the road was completed from St. Paul to Red·Wing by the first day of January, 1871, within the meaning of the contract and ordinance. It will be observed that the statement of the complaint is, that on the first day of January, 1871, and until after December first, 1871, there was " a break in, and an unfinished section of, said road at and opposite to said city of Hastings of not less than one mile in extent, about one-third of which distance consists of the Mississippi river, at an ordinary stage of water, and the balance of bottom lands; and that no bridge across the river, nor railroad track across said section of bottom land, was ever constructed or completed for the transit of freight or passengers thereon until subsequent to the first day of Decem-

ber, 1871." The appellant's counsel argues this point upon the basis that nothing was wanting except a bridge across the Mississippi; but the allegation of the complaint—which is admitted by the demurrer—is that the gap extended beyond the east bank of the river on *terra firma* for about two-thirds or three-quarters of a mile. Now, laying aside for the present the question which would arise if nothing but the bridge were wanting, we are utterly unable to conceive how it can be said upon the facts as stated in the complaint (as heretofore recited,) that the appellant's railway was fully constructed and put into successful operation for the transit of freight and passengers from St. Paul to Red Wing. Upon the facts stated we can see no distinction, in principle, so far as this question of full construction and successful operation, etc., is concerned, between the case presented by this unfinished gap of two-thirds or three-quarters of a mile on *terra firma*, and such a case as would be presented by a similar gap of five miles. And it is to be observed that upon the statements of the complaint, this gap or break was not a mere trifle—something which might possibly be disregarded—but that it occasioned serious delay and inconvenience, increasing both fares and freights, and, in the language of the complaint, "substantially prevented the transportation of all freight" between Saint Paul and Red Wing, upon appellant's railway. Upon the face of the complaint, then, without elaborating a point which it seems to us can hardly be made clearer than it is made by a simple statement of the facts, we are of opinion that the appellant is not entitled to the bonds on account of its failure to " fully construct and equip the said railway, and put the same into successful operation for the transit of freight and passengers from St. Paul aforesaid, to said Red Wing, on or before the first day of January, 1871."

If an answer should be put in in this case, and a trial had

Hodgman v. The Chicago and St. Paul Railway Company.

upon issues of fact, a somewhat different question might be presented. If it should appear that nothing but a bridge was wanting to constitute a continuous track from St. Paul to Red Wing, we are not to be understood as intimating that its place might not be supplied by a temporary track laid upon the ice when that was feasible, or by a ferry so operated as to permit the passage of a train across the river, and perhaps in some other way which may not occur to us, but which is not uncommonly adopted by railway companies and would not seriously interfere with the convenient transit of freight and passengers from St. Paul to Red Wing, and *vice versa*, as like transit is accomplished under similar circumstances. And with a desire to avoid placing any obstacle in the way of a fair trial of this action, though we are unable to conceive how (consistently with the case made by the complaint) the company can show a compliance upon its part with the before mentioned condition as to the issuance of the bonds, we wish to add that we are not to be understood as taking the position that such showing is an absolute impossibility. There may be engineering considerations entering into the question involved, or facts not disclosed by the complaint, which would render a showing of the kind spoken of possible and competent; though as at present advised we confess our inability to see how this can well be.

V. As to appellant's last point, we are utterly unable to discover any connection whatever between the act of March 4th, 1868, extending the time for the completion of appellant's road from St. Paul to a point opposite Hastings, etc.,— being *chap.* 11, *Sp. Laws*, 1868—and the agreement and ordinance hereinbefore mentioned. We do not perceive how that act can throw any light upon, or affect in any way, the construction of the agreement or ordinance, or the solution of the questions involved in this case.

Hodgman v. The Chicago and St. Paul Railway Company.

VI. This disposes of all the points made by the appellant. There is, however, one position pressed by the respondent which it is best to consider, as it is impossible for us to foresee what phase this case may hereafter assume. It appears that prior to the passage of the ordinance hereinbefore referred to and known as ordinance No. 47, another ordinance known as No. 46, covering similar ground but differing in some particulars had been passed by the city council and submitted to, and approved by, the legal voters. It is contended by the respondent that the act by which the issue of bonds was authorized became *functus officio*, because it only provided for the submission of one ordinance in case the same was approved by the voters. But the act evidently contemplated an agreement to be entered into between the city council and the appellant, as the basis of, and to be embodied in, the ordinance to be submitted. It is very evident that the agreement was to precede the submission of the ordinance. As it does not appear that any such agreement was entered into before the submission of, or as the basis of, ordinance No. 46, we presume that it was on account of such omission that the submission of ordinance No. 46 was regarded and treated—and with entire propriety—as void. The case stood, then, as if there had been no submission, and there was nothing in the way of the submission of ordinance No. 47, which, among other things, repealed ordinance No. 46.

The order overruling the demurrer is affirmed.