CASE 5—EQUITY—JANUARY 19, 1882.

# Madison County Court v. Richmond, Irvine and Three Forks Railroad Company.

### APPEAL FROM MADISON CIRCUIT COURT.

1. The appellee was the judge of the character of proposition it would present, and the county court had discretionary power, under section 15 of appellee's charter, to submit or not submit, the question of subscription of stock to the voters of Madison county, who had the ultimate power of adoption or rejection.
2. Appellee having proposed the conditions of the contemplated subscription, the county court having submitted them to the people, and a vote having been taken resulting in the adoption of the conditions, the county court cannot revoke its action, and order a second vote. To do so would be to assume legislative functions.
3. The question as to the alleged unreasonable time appellee has taken to obtain additional subscriptions has already been adjudicated, and it operates as a bar to the proceeding herein affecting that question.
4. That the bonds issued bear less than eight per cent. interest does not invalidate them. It enures to the advantage of the obligors.

T. J. SCOTT FOR APPELLANT.

The order of the Madison county court of October, 1876, is in conflict with the original and amended charter of appellees. The subscription ordered to be made by the county judge is invalid. The county court or judge cannot issue bonds of the county under the order set forth in the agreed case herein. The order of revocation was valid.

J. B. McCREARY, C. H. BRECK, W. B. SMITH, AND C. F. & A. R. BURNAM FOR APPELLEE.

Under appellee's charter they could, by their officers, petition the Madison county court to submit to the voters of the county the question of an absolute or conditional subscription (sec. 15). A conditional

Madison County Court v. Richmond, Irvine and Three Forks R. R. Co.

subscription was submitted to the people and adopted. The order of attempted revocation is a nullity. (7 Wallace, 82; 2 Smith's Leading Cases, 762 to 790.) The question involving the alleged unreasonable term in obtaining subscriptions has been litigated and barred.

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

By an act of the legislature, passed February 28, 1873, the Richmond, Irvine and Three Forks Railroad Company was incorporated.

Section fifteen of the act provided that whenever the president and· directors of the company shall, in writing, request the county court of any county, through or adjacent to which it is proposed to construct its railway, to do so, such court may submit to the qualified voters of such county the question whether *said court* shall subscribe to the capital stock of the company, for and in behalf of the county, the amount of stock specified in the request of the company, either absolutely, or upon such terms and conditions as may be proposed by the company.

It also prescribed the time and manner of holding the elections which might be ordered.

After specifying by whom, and how the result of the election should be returned, and the vote counted, section sixteen uses the following language: "And if it shall appear that a majority of those voting voted in favor of the subscription of the stock proposed, the *county judge shall order* the vote to be entered of record, *and the subscription to be made* by the clerk, for and on behalf of the county . . . . thus voting, and *on the terms specified* IN THE ORDER *submitting the question to a vote.*"

The president and directors of the company filed their petition in the Madison county court, and, pursuant to their

18          KENTUCKY REPORTS.      [VOL. LXXX.

Madison County Court v. Richmond, Irvine and Three Forks R. R. Co.

request, the court ordered an election to be held on the 25th of November, 1876, to take the sense of the qualified voters of the county on the propriety of subscribing, subject to certain conditions, $250,000 to the capital stock of the company, and an additional sum sufficient to pay for the right of way and depot grounds, to be located in Madison county.

It is not seriously questioned that the election was advertised and regularly held by the officers named in the order; that the poll-books were returned and vote counted and certified in conformity to the charter of the company; and that a majority of the qualified voters of Madison county, voting at the election, voted in favor of the subscription, with the conditions named in the order under which the election was so held.

After a careful analysis of the cases before us, we have concluded that three general propositions present themselves for our decision—

*First.* Is the order, with its conditions, of the county court submitting the proposition to the voters of Madison county authorized by the company's charter and the amendments thereto?

*Second.* Has the county judge the authority, under the charter, with or without the direction of the county court, to order the subscription to be made by the clerk on the terms specified in the order submitting the question to a vote?

*Third.* If these propositions be decided in the affirmative, has the company performed the conditions precedent within a reasonable time, and had the county judge authority to hear proof and decide on that question?

The last proposition involves the effect of the judgment rendered in the common pleas court, upon the same issues therein adjudicated, and again urged in the agreed case subsequently submitted to the circuit court.

The determination of the first proposition will have been reached after a correct disposition of the second condition annexed to the order submitting the proposition to subscribe to a vote; that condition is as follows:

"It is further conditioned that no subscription, in behalf of Madison county, shall be made, or binding upon the county, until a sum in the aggregate, including the sum to be subscribed by this county, shall have been subscribed in a valid manner, and *bona fide* to the capital stock of the company, for the purpose of constructing said railway, by solvent persons, counties, or corporations amply sufficient to construct said railway from Richmond, Kentucky, to Beattyville, Lee county, Kentucky, without any indebtedness or mortgage of any kind existing at the time 'of its completion, and until satisfactory proof shall have been presented to the county judge by said company that such subscription has been made as aforesaid; and upon such proof being made, it shall be the duty of the county judge to enter an order of record directing the clerk to make the subscription, for and in behalf of the county, in conformity to all the conditions and provisions made in said order, provided the other conditions precedent to the making of the subscription shall have been complied with by the railroad company."

The authority for imposing this condition is found in the general provision of section 15 of the charter, wherein it is provided that the county court may submit the question to the voters of the county whether said court shall subscribe,

*either absolutely*, or upon such *terms* and *conditions* as may be proposed by the company.

There is hardly room for argument on so plain a proposition.

The company was the judge of the character of the proposition it would propose to the voters, and the county court had the discretionary power, under this section, to submit or not to submit the question, as, in the judgment of a majority of the court composed of the judge and justices, might seem best, and the voters had the ultimate power of rejection or adoption.

But the company having proposed the terms and conditions of the contemplated subscription, the county court having made the order in harmony therewith, and the vote being taken in pursuance of the order, which is authorized by the charter, the county court had no power to revoke its action, and thereby assume legislative functions.

The county court and county judge are the agents, under the charter, of the legislature, which may change, modify, or enlarge their powers and control, and direct their action in carrying out any legitimate legislative purpose expressed in the charter.

This position is sustained by the text on page 258 of Burroughs on Public Securities, where it is said:

"When the vote is taken upon a proposition to aid a railroad, the officers whose duty it is to make the subscription and issue bonds, must follow the provisions of the proposition accepted by the people. They cannot alter them in any matter of substance, nor can the municipal authorities, such as the council of the city, change the terms of aid, or alter the conditions upon which it is given. Even the people themselves cannot, by a second vote, change the

terms of the first submission." (Town of Plattville v. Galena, 43 Wis., 443; Hodgman v. Chicago and St. Paul R. R. Co., 20 Minn., 48.)

It is true that section 15 uses this language: "whether *said court* shall subscribe;" but it is also true that section 16 provides, that if it shall appear that a majority of those voting voted in favor of the subscription of the stock proposed, the *county judge* shall order *the subscription to be made* by the clerk on the terms specified in the order submitting the question to a vote.

From a superficial view, it might be inferred that these sections conflict; but construed in connection with each other, they readily harmonize, and evince the purpose on the part of the legislature to afford an easy and safe mode of making the subscription by a responsible official, whom the county court had the power to require to hear proof of performance by the company of the conditions precedent.

It is true that the county court might have reserved to itself the right to hear the proof, and decide upon its sufficiency, but it did not do so; and we are unable to find in the charter that such power is delegated to the county court, to be exercised by it exclusively.

The general power confided to the county court to require conditions to be annexed to propositions of the company, before submitting them to a vote, and the command of section 16 to the county judge that *he shall* order the subscription to be made by the clerk on the terms specified in the order submitting the question, precludes all doubt of the power of the county court to specify as part of the terms or conditions of its order that the county judge shall hear proof of performance of the conditions imposed upon the company before he shall order the subscription to be made.

According to our construction of section 16, the county court had the alternative power of hearing the proof, or annexing a condition to the subscription that the county judge should hear it, or it might have submitted the proposition without any such condition as number two above quoted, and then it would have been the duty of the county judge to order the subscription to be made on the remaining conditions, and such a subscription would have been conditional, but nevertheless a subscription, subject to defeat by failure upon the part of the company to comply with the conditions.

The charter does not specify what particular conditions the county court may embrace in the order submitting the proposition of the company to a vote. The propriety and necessity of the conditions belong to the discretion of the county court; but that discretion must be exercised before the vote shall be taken, as thereafter nothing is left to the county court, county judge, or county clerk but pursuit of the statute and strict obedience to its requirements. The county court had, therefore, the power to impose the conditions.

The majority of the electors cast their votes in favor of the proposition as conditioned, thus creating the jurisdictional fact and foundation for the action of the county judge, who was bound to respect the terms and conditions specified in the order of the county court submitting the question to a vote in ordering the subscription to be made by the clerk.

And an essential part of the terms specified in the order of the county court was, that upon proof being presented to the county judge that the additional subscriptions named in condition two had been obtained, and that the other con-

ditions precedent had been complied with, he should order the subscription to be made by the clerk.

This the county judge has done, and his action is conclusive, unless fraud or bad faith, or a willful perversion of the proof, be shown upon the part of himself or the company; and no taint or suspicion of unfairness in his or the company's action is even suggested.

If he has honestly, though erroneously, judged as to the sufficiency of the proof, and the county court might have been less liable to mistake, yet this question being one about which the judgment of the county court or the county judge had to be invoked and trusted, and the county court having yielded or shifted this responsibility to the county judge, who was authorized by the charter to exercise it, we can perceive no reason for disturbing his action.

But the breadth of this proposition is not required to sustain it, as the agreed facts concede that the proof of all the conditions necessary to his action was sufficient.

Having disposed of the first proposition, very little need be said upon the second.

By the express provisions of section 16, the county judge is authorized to order the subscription on no other terms than those prescribed by the county court, and voted on by the people. If there had been annexed to the proposition conditions which made no reference to the county judge or his duties, upon a favorable vote being had, without directions from the county court, it would have been the duty of the county judge to order the subscription to be made on the terms specified in such proposition and its conditions.

But it seems, in order to guard against making a conditional subscription, the county court determined to convert what was apparently a conditional subscription as voted

upon, into an absolute subscription, by requiring proof to be produced to the county judge that all the conditions precedent had been complied with before he should order the subscription to be made.

Requiring proof that the conditions precedent had been performed only added strength to the propriety of an act the county judge had the power to perform, and which was his duty to do, even if the county court had imposed conditions that such proof should be heard by it; as in all cases, whether the proposition be absolute or conditional, it is the duty of the county judge, upon ascertaining by the mode pointed out in the charter that a majority of those voting had voted in favor of the subscription, to order it to be made by the clerk on the terms specified in the order submitting the question to a vote.

The county court and county judge are as much bound as the company to conform to the charter in exercising the delegated authority which the legislature has invested them with as its agents; and no departure from its terms can be indulged by any of them.

Hence the order of revocation made by the county court, and the second election, were ineffectual to alter the terms on which the vote was first taken.

A legal submission to the electors, their approval, and compliance by the company with the conditions of the proposed subscription, constitute all the necessary preliminary facts to a valid subscription by the county clerk made in obedience to the order of the county judge.

The authority conferred upon the county court and county judge by the charter under consideration is much broader, and very different from the powers considered in the cases

of the Mercer and Garrard County Courts v. Ky. Riv. Nav. Co., 8 Bush, 307.

There the act conferred upon the justices composing the county courts, authority which was purely personal, and the agent who made the subscription acted out of court, with no warrant of law for his appointment or action.

This reference, with what has gone before in this opinion, manifests the distinction between the cases.

Even if the company and its agents, pending the consideration of the proposition by the people before the election, represented to them that their favorable vote would enable the company to procure subscriptions from cities, counties, and other corporations; yet it appears from the proposition, and the conditions on which the people voted, that they did not rely upon such representations, because they guarded themselves from responsibility as subscribers, which might accrue, notwithstanding the company could not comply with the alleged representations, by requiring the company not only to procure such additional subscriptions from cities, counties, and other corporations, but to adduce proof thereof to the county judge before the subscription should be made or binding upon the county.

It cannot be that people securely guard themselves against misrepresentation, and even against an honest mistake of judgment, and then become influenced by the representations which they have rendered harmless, even if these representations turn out to be false.

The object of the county court seems to have been to secure the people from loss, which might result from an abortive effort to build the road.

And if the conditions imposed by it are complied with, and we have no ground to doubt that fact, as it is agreed the

proof before the county judge shows the performance of the conditions precedent by the company, there can be no possible danger of the subscription of the county being squandered.

Considering all the circumstances of this case, we do not think that the time merely within which the road should be built was the leading or essential element that governed the voters in casting their ballots for the subscription, as no time was specified in any of the conditions within which the additional subscriptions should be obtained, and, doubtless, it was left out of the order of submission, for fear it might defeat the great object which a majority of the county court and voters had in view.

In this state of case, the law fixes a reasonable time as the period within which the conditions should be performed. What is reasonable time must depend upon the nature and extent of the thing to be done, and the character of the person who is to do it.

Many things involving information, skill, discretion, and great labor are to be done before subscriptions can be obtained from cities and counties, as is aptly illustrated by the course and character of the cases we are now considering; and in view of the efforts of the appellee to obtain other subscriptions, and the obstacles which the county court has placed in its way by attempting to impose limitations unauthorized by law, after a legal vote had been taken in favor of the subscription, and the consumption of time necessary to a second election, which the county court participated in securing in order to modify the terms of subscription which had passed beyond its lawful power, we are not convinced that the mere lapse of four years unconnected with any purposed delay, is an unreasonable length of time to indulge

the company in obtaining the subscriptions prerequisite to a valid subscription by Madison county.

In the action in the common pleas court the identical question as to the unreasonable time which the appellee is alleged to have taken to obtain the additional subscriptions was raised and adjudicated by that court; and it furnishes a bar to the proceedings herein in so far as they are based upon that question. (Aurora v. West, 7 Wallace, 82; 2 Smith's Leading Cases, 7th Amer. ed., 762 to 790; Henderson v. Henderson, 3 Hare, 115.)

By the provisions of the amendment of 23d February, 1876, section 3, it is the duty of the county court to issue the bonds for the subscription, when proper application shall be made to it for that purpose, after the subscription to the capital stock shall have been made. This duty the county court performs by ordering the bonds to be issued, and signed by the county judge, and countersigned by the county clerk, except as to the coupons, which the clerk alone can be required to sign.

If the bonds be issued with the consent of the company, bearing a less rate of interest than eight per cent., that fact would not invalidate the bonds, because it would be beneficial to the obligors, and can be accomplished without increasing their responsibility or prejudicing their rights.

The power, terms, and purpose for which the bonds may be issued cannot be altered; but if they be issued in conformity to the terms on which the people voted, and in accordance with the charter in every other respect, save the voluntary deduction or surrender of two per cent., or any amount of the interest, on the part of the company, the bonds so issued will be valid.

The judgment of the common pleas court sustaining the demurrer to the petition, and the judgment on the agreed facts by the circuit court, must, for the reasons given, be affirmed.