# SCHOOL DISTRICT NO. 40, ROCK COUNTY v. P. J. BOLSTAD.[1]

May 16, 1913.

Nos. 18,007—(91).

**Changing site of district school.**

1. Construing R. L. 1905, §§ 1306, 1308 and 1320, it is *held* that the site of a school-house may be changed at a special meeting of the voters called pursuant to section 1306.

**Naturalization — effect on alien's minor son.**

2. An infant born out of the United States, dwelling in the United States, and being a minor at the time of the naturalization of his father, succeeds to the status of his father; and the evidence justified a finding that one of those requesting the call of the special meeting, claimed by the defendant not to be a citizen, became a citizen through the naturalization of his father.

**Majority vote — effect of admission at trial.**

3. An admission made at the trial that the moderator of the special school meeting at which the proposition to change the location of the schoolhouse was voted on "duly declared said proposition carried" sufficiently shows that it was carried by the vote required by the statute, though the vote required was a majority of the resident voters, and the proof did not show that the affirmative voters were a majority of the resident voters.

**Condemnation of school site — defense.**

4. If the effect of R. L. 1905, § 1324, is to prevent the acquisition of a school site, unless the funds to pay for it are appropriated, levied or on hand, the failure to so provide funds is defensive matter.

**Eminent domain.**

5. Under section 1320 a school district may condemn without first making an unsuccessful attempt to purchase.

**Same — question of necessity not reviewable by courts.**

6. In condemnation the question of necessity is a legislative one, and when

[1] Reported in 141 N. W. 801.

---

Note.—The authorities on judicial power over the right of eminent domain are reviewed in an elaborate note in 22 L.R.A.(N.S.) 1. And for the necessity of taking particular land by eminent domain as a judicial question, see note in 11 L.R.A. (N.S.) 940.

a school district selects a site, in the manner authorized by the statute, its action is final, and the question of the necessity of its taking is not open to judicial review.

School District No. 40 of Rock county, by its school board, petitioned the district court for that county to condemn a certain parcel of land as a site for a school house. The petition was heard by Nelson, J., and when petitioners rested P. J. Bolstad and Oliana Bolstad moved that the application be dismissed on the ground that the evidence was insufficient to authorize the granting of the petition, that it did not appear that any such proceeding had been authorized by the school district, or that any necessity existed for the condemnation of the land, and that it did not appear that the condemnation was authorized by law. The motion was denied. The court made findings and appointed commissioners to ascertain the damages. From a judgment entered upon the report of the commissioners, P. J. Bolstad appealed. Affirmed.

*A. J. Daley,* for appellant.

*C. H. Christopherson,* for respondent.

DIBELL, C.

The defendant appeals from a judgment of the district court of Rock county condemning certain land for the purpose of a schoolhouse site. A number of objections are made to the condemnation proceedings which we now consider:

1. The voters of the school district determined, at a special meeting called for that purpose, to change the location of the school house to a definite site, and authorized the school board to acquire the new site by lease, purchase or condemnation. The claim of the defendant is that such change could be made only at the annual meeting for which provision is made in section 1308, R. L. 1905, where power is expressly granted to make such change. Section 1306 provides for a special school meeting, to be called upon the request of five freeholders and voters of the district, specifying the business to be acted upon, and provides that no business, except that named in the notice, shall be transacted, and otherwise makes no limitation. Section 1320 empowers the school board, "when

authorized by the voters at a regular meeting, or a special meeting called for that purpose," to acquire necessary school-house sites. There is some overlapping, and perhaps some slight inconsistency, in these three sections, but we find no difficulty in holding that the site of a school house may be changed at a special meeting called for such purpose as well as at the annual meeting.

2. The special meeting in question was called at the request of five men, purporting to be freeholders and voters of the district. Defendant claims that one was not a citizen of the United States and that therefore the call was invalid. The signer of the call, against whom this objection was made, testified that he was born in Norway; that he came to this country when he was 16 years old; that his father was born in Norway; that he understood that his father became a naturalized citizen before he, the witness, became of age; that he himself had not taken out naturalization papers; that he had voted in Minnesota for many years, and since 1896 in the school district; and that he always believed he was a citizen because of his father's naturalization. There was no disputing evidence. We hold this evidence sufficient to justify a finding that he was a citizen through the naturalization of his father.

3. Section 1308, R. L. 1905, as amended by Laws 1911, p. 346, c. 249, requires for the change of location a vote of "a majority of the legal voters of the district, who have resided therein not less than one year prior to the vote." At the special meeting, at which the change of location was voted, there were 19 votes for and 15 against the change. There was no showing as to how many legal voters of the district resided therein for one year prior to the vote. At the trial it was stipulated that the moderator of said meeting "duly declared said proposition carried." We hold this admission sufficient evidence that the proposition was carried by the requisite majority, without an affirmative showing that the 19 were a majority of the legal voters residing in the district for one year.

4. Section 1324, R. L. 1905, provides that no school board shall expend money or incur liability for any sum beyond the sum appropriated by vote of the district for such purpose, or levied by the board pursuant to that section, or on hand and applicable thereto.

There was no showing that there was any money thus appropriated or levied or on hand. We hold that if a failure to have a sufficient sum appropriated, levied, or on hand, defeats the condemnation proceeding, it is defensive matter, for proof by the defendant.

5. Section 1320 gives the school district power to acquire a site "by lease, purchase or condemnation under the right of eminent domain."

The contention that the power of eminent domain cannot be exercised in acquiring a site, unless the owner has refused to sell, is without merit. The holding in the case of Inhabitants v. Copeland, 2 Gray (Mass.) 414, cited by defendant, to the effect that a refusal to sell is a prerequisite, finds its support in a statute. We have no such statute.

6. The claim is made that a necessity for taking the land sought to be condemned is not shown. The defendant made a timely objection at the trial that necessity was not shown.

Section 13 of article I of the Constitution provides that private property shall not be taken for public use without just compensation. This is a declaration of the bill of rights. There is no limitation in the Constitution upon the exercise of the right, except that there must first be just compensation. The sovereign power rests in the legislature, and may be directly exercised, or delegated to governmental agencies or administrative bodies, and to public or private corporations. The authority to exercise the power of eminent domain in acquiring necessary sites for school houses is conferred upon school districts, in general terms, by R. L. 1905, § 1320. No procedure nor tribunal, peculiar to such condemnation, is provided.

The method of taking property by the exercise of the power of eminent domain, and the rights acquired, are regulated and defined by R. L. 1905, §§ 2520–2542. Section 2520 is as follows:

"Whenever the taking of private property for any public use shall be authorized by law, it may be acquired, under the right of eminent domain, in the manner prescribed by this chapter; but nothing herein shall apply to the condemnation of property by any incorporated place whose charter provides a different mode of exercising the rights

of eminent domain by it possessed, or to the taking of property under the chapters relating to roads and drainage."

Section 2524 provides for the filing of a petition, the method of acquiring jurisdiction, and the fixing of the time and place of hearing.

Section 2526 provides that at the time and place fixed the court "shall hear all competent evidence offered for or against the granting of said petition, regulating the order of proof as it may deem best. If the proposed taking shall appear to be necessary, and such as is authorized by law, the court, by an order, shall appoint three disinterested commissioners, residents of said county, to ascertain and report the amount of damages that will be sustained by the several owners on account of such taking. * * * It may also, in the discretion of the court, limit the title or easement to be acquired by the petitioner. * * * "

No question is made but that the taking of property for purposes of a school-house site is a taking for an authorized purpose and for a public use.

The petition alleged the necessity of the taking, and the court found it. No evidence of the necessity of the taking was offered.

A majority of the court are of the opinion that the judgment of condemnation is justified, without proof of necessity; and they place their conclusion upon the ground that the prior proceedings, regularly taken by the school district and terminating in a fixing of the site, resulted in the necessity for its taking.

It is without question that the power of eminent domain is a sovereign power, inherent in government, resting in the legislature, unlimited except as the Constitution guarantees compensation, exercisable directly by the legislature or by a body to which it delegates the power, the act of such body in taking being the act of the state. The question of necessity is a legislative one, not subject to judicial review, unless it is so provided by the Constitution or by legislative act. The view adopted is that the state, by the statute, delegates to school districts the power to select a site, and when such selection is made, in the authorized way, the necessity of acquiring the site comes, and with such necessity the court has nothing to do. The question of

necessity is a legislative one, definitely and finally determined by the school district by virtue of the power delegated to it. The pertinent language now quoted from Fohl v. Common Council of Sleepy Eye Lake, 80 Minn. 67, 70, 82 N. W. 1097, involving the condemnation of land for streets, under a different statute, expresses in a general way the thought of the majority in this connection:

"The power and authority to establish and lay out streets and highways is legislative, and all questions of expediency and necessity are exclusively committed to that branch of the government. The power may be delegated to municipalities or municipal boards or commissioners, and their conclusion and determination as to the propriety and necessity of a proposed street or highway is as final and conclusive as though the legislature itself had determined the same. Such questions are not open to judicial review. The whole subject of the right of eminent domain for the purpose of taking private property for public use, such as laying out and establishing streets and highways, is, within certain constitutional limitations and restrictions, one of exclusive legislative cognizance; the proceedings, of course, being guided and regulated by legal rules and principles."

The view of the majority is that the fixing of the site made the necessity of taking it and that no question of necessity is open to judicial inquiry.

Judgment affirmed.

PHILIP E. BROWN, J., took no part.