INDEPENDENT SCHOOL DISTRICT NO. 68, FARIBAULT COUNTY, AND ANOTHER v. W. F. ROSENOW AND OTHERS.[1]

February 5, 1932.

No. 28,651.

[1]Reported in 240 N. W. 649.

*Meighen, Knudson & Sturtz,* for appellants.
*Frundt & Morse,* for respondents.

STONE, J.

Plaintiffs, independent school district No. 68 of Faribault county and W. H. Barr, one of its resident taxpayers, seek an injunction to prevent the calling by defendants of a special election in the school district for the purpose of rescinding the authority given by a former election for the issue of bonds. The trial without a jury resulted in a decision for plaintiffs. There was a motion by defendants for amended findings or a new trial, which was denied. They appeal both from the order denying that motion and the resulting judgment for plaintiffs for the permanent injunction prayed for in the complaint.

November 20, 1930, at a special meeting, the voters of the school district authorized the issuance of bonds to the state of Minnesota in the sum of $120,000 for the erection and equipping of a new school building. Pursuant to that action and soon thereafter, the school board, acting under L. 1907, p. 133, c. 122, G. S. 1923 (1 Mason, 1927) §§ 1959 to 1968, applied to the state board of investment for the desired loan. The application was granted December 17, 1930. The bonds were executed on behalf of the district January 22, 1931, and promptly delivered to the board of investment, where they remain. No money has been paid on the bonds. The state is withholding payment, according to the findings, "until this case and allied litigation is finally determined."

July 5, 1930, the school board retained architects to prepare plans and specifications and superintend construction of the proposed building, under an agreement "conditioned upon said bonds being authorized by the voters of said district." The architects have gone so far with their work that their services in the matter are about 85 per cent complete. The school board is said to have become obligated to the architects possibly to the extent of $5,000. The proposed building will cost, with its equipment, close to $130,000,

the district apparently having in its treasury enough money to pay the excess of that cost over the proceeds of the bond issue.

January 27, 1931, the defendants, all voters and freeholders of the school district, filed and served upon the clerk of the school board a written demand (under G. S. 1923 [1 Mason, 1927] § 2794) for the calling of a special election to vote upon three propositions. The first and controlling question was whether the authority previously given for the bond issue should be rescinded. The other two were incidental and subsidiary to the first. The election so proposed is the one enjoined by the judgment under review. The decision below, adverse to defendants, was put upon the ground "that said election, if held, will be abortive" and "upon propositions unauthorized by law."

█ It may be assumed for present purposes, as argued for plaintiffs, that ordinarily, once a municipality such as a school district, by vote of its electors, has authorized the issue of bonds, it cannot rescind that action by a subsequent election called for that purpose. That rule may be modified or wholly abrogated by statute. In its application to this case we think it has been. The powers of a Minnesota school district are the same whether exercised through an annual or a special meeting. Sanborn v. School Dist. No. 10, 12 Minn. 1 (17) ; School Dist. No. 40 v. Bolstad, 121 Minn. 376, 141 N. W. 801. Under G. S. 1923 (1 Mason, 1927) § 2798, the voters, regularly convened in a school meeting, may (subd. 4) designate a schoolhouse site and provide for the erection of a building thereon, and (subd. 5) may "repeal and modify their proceedings from time to time." There is nothing in the context modifying or limiting that power to "repeal and modify" or creating exceptions therefrom.

We hold therefore that the voters of a school district may, in properly called meeting, rescind the action taken at an earlier election authorizing a bond issue; provided of course that the bonds have not been issued in such fashion as to bind the district contractually and beyond its power to withdraw. Had the proposed bond issue now under consideration gone that far, doubtless an injunction against the holding of an election to rescind the author-

ity therefor would have been inescapable. But the state board of investment, acting within its statutory power, has declined to issue the bonds. That is, it has refused to accept final delivery thereof for the very purpose of being at liberty to return them to the district without obligation upon the latter if the proposed election shall be held and the authority first given for the bond issue is thereby rescinded.

There is nothing in the cases cited for plaintiffs that in any way opposes our conclusion. An issue of road bonds by a village was involved in People ex rel. Osborn v. Board of Trustees, 119 Misc. 357, 196 N. Y. S. 459, 460. There could be no resubmission of the question, it was held, because "no provision is found in the village law for the resubmission of a proposition already adopted." The subject matter of People ex rel. I. M. Ry. Co. v. Town of Waynesville, 88 Ill. 469, 475, was a municipal subscription in aid of a railroad. It was held that the conditions of the subscription, once authorized, could not be changed by subsequent vote, the reason being that "there is no provision in this charter authorizing an election to change the terms or conditions upon which a subscription has been already voted. Nor are we aware of any general law that confers the power." In the instant case we have such a general law. Municipal subscriptions were involved in Illinois Midland Ry. Co. v. Town of Barnett, 85 Ill. 313, and Madison County Court v. R. I. & T. F. R. Co. 80 Ky. 16. Both cases are plainly distinguishable from this.

■ We cannot conclude that the authority given by statute to the voters of a school district to "repeal and modify" their proceedings has been limited by L. 1907, p. 133, c. 122. That is the law under which the district proceeded in authorizing and applying for the bond issue and under which the bonds would have been purchased by the state if they had been accepted. That chapter is the law controlling the issue of municipal bonds and their direct purchase by the state. But it contains nothing to indicate that it was the legislative intention to abrogate the general statutory power of a school district to amend and repeal previous proceedings. Had

this matter gotten to the point where the bonds had actually been accepted by the state and the money paid to the school district, a very different situation would have been presented.

We need not consider the argument for plaintiffs which assumes that the district is bound by contract with the architects and that it may have to respond to them either in compensation or damages. The point is that the proposed special election was for the purpose of rescinding the authority for the bond issue. The existence and scope of that power are in no wise affected by the fact that its exercise may result in a collateral and incidental liability against the district. That is a matter for the voters to consider and not a question for us to dispose of now. That in any event the district will have in exchange for whatever it pays the architects the benefit of the plans and specifications prepared by them is a circumstance that is interesting but not especially helpful one way or the other. Equally irrelevant is the possibility, under our construction of the statute, that a disgruntled minority may conceivably proceed to unconscionable and bothersome lengths in calling elections to rescind previous proceedings. That argument but raises questions of practical expediency rather than of law. They are for the voters first, and then if the predicted evils result it is for the legislature to forestall them. After all, there is no vested right to be protected until the going into effect of the authorized contract.

Judgment reversed.