HENRY O. PAETZEL v. JOHN R. CLIFT.
C. H. HARTUPEE v. SAME.[1]

July 13, 1951.

Nos. 35,400, 35,401.

[1]Reported in 48 N. W. (2d) 731.

*Russell Smith,* for appellant.

*Snyder, Gale, Hoke, Richards & Janes* and *Edmund T. Montgomery,* for Henry O. Paetzel and C. H. Hartupee as chairmen of the school boards of Westview and Meadowbrook respectively, respondents.

CHRISTIANSON, JUSTICE.

This case involves an attempted dissolution of Common School District No. 138, hereinafter referred to as Westview, and the annexation of the territory of that district to Independent School District No. 89, hereinafter referred to as Meadowbrook. Both of these districts are located in Golden Valley, a suburb lying directly west of the city limits of Minneapolis. Defendant is the treasurer of Westview, and plaintiffs, Henry O. Paetzel and C. H. Hartupee, are the respective chairmen of Westview and Meadowbrook districts. Appeal is taken from each of two judgments declaring void for lack of jurisdiction an order issued by the board of county commissioners of Hennepin county, hereinafter referred to as the county board, dissolving the Westview district and directing annexation.

On June 20, 1949, a special meeting of the Westview district was duly called at which 273 electors of the district voted, 156 to 117, to adopt a resolution directed to the county board requesting dissolution of the Westview district and expressing a desire to be annexed to the Meadowbrook district.[2] The results of this election were certified to the county auditor the following day. Later, upon written request of five freeholders and voters of Westview and after the requisite ten-day notice, a second special meeting was held on July 18, 1949, for the purpose of voting upon a resolution reading:

[2]See M. S. A. 122.28, which authorizes this procedure.

"We hereby request that the resolution adopted at the Special Meeting of Common School District No. 138 Held June 20, 1949 be hereby revoked."

At this meeting, 70 electors voted 67 to 3 to adopt the above-quoted resolution. The result of this vote was also certified to the county auditor.

On August 10, 1949, having previously given the requisite notice, the county board adopted a resolution dissolving Westview district, and conducted a hearing which resulted in the order annexing the Westview territory to the Meadowbrook district. Previous to the hearing, the county board had been advised by the assistant county attorney of Hennepin county that the election held at Westview's second special meeting was void and did not deprive the county board of jurisdiction to proceed.

Each of the present plaintiffs appealed from the order of the county board to the district court, which made findings and conclusions, and in both cases ordered entry of judgment declaring the board's order void for lack of jurisdiction. It is from these judgments that the present appeals are taken. Since both judgments are identical in substance and based upon the same facts, the decision rendered herein will govern each appeal.

■ Defendant's first contention is that a common school district which has once voted to dissolve may not thereafter hold a special election and rescind its first vote. He argues that the first vote exhausts the powers of the district and that, once dissolved, it may not be revitalized by a second vote. This position misconceives the function performed by a school district vote requesting dissolution. Under M. S. A. 122.28, the vote is not the effective act of dissolution, but simply the jurisdictional requirement necessary to initiate the procedure by which the county board may consider the request. Cf. Independent School Dist. No. 36 v. Independent School Dist. No. 68, 165 Minn. 384, 388, 206 N. W. 719, 720, where it was said:

"The purpose of the petition is to form and put into operation a legal proceeding for the purpose of enabling the board to examine into the proofs, inquire into the facts, and the feasibility of the proposed project and to act thereon, and make a decision which, in their judgment, is for the best interests of the territory and all of the citizens concerned, in accordance with the purpose of the statute."

Although in most cases the county board may not act until such consent is received, the vote is not binding upon it.[3] The function of the county board in this respect is legislative and its action discretionary within the limits of the statutory authorization.[4] Thus, no dissolution occurs until the board so resolves. This being so, the action of the school district involves no question of revitalizing or reëstablishing a district effectively dissolved, but rather presents the question whether a common school district has the authority to change what amounts only to an expression of community attitude.

The powers of a school district are defined by statute.[5] The section of the statute specifically dealing with special meetings of common school districts, § 124.07, is silent concerning the power to repeal prior proceedings. However, resort may be had to the statutory provisions governing powers of a common school district at annual meetings, since, as respects matters properly noticed, the powers at a special meeting are the same as those at an annual meeting.[6] Section 124.01 expressly provides:

[3]In re Enlargement of Independent School Dist. No. 43, 148 Minn. 321, 181 N. W. 919.

[4]*E. g.*, Common School Dist. No. 85 v. County of Renville, 141 Minn. 300, 170 N. W. 216; In re Enlargement of Independent School Dist. of Granite Falls, 140 Minn. 133, 167 N. W. 358; In re Appeal of Consolidated School Dist. No. 16, 179 Minn. 445, 229 N. W. 585.

[5]See, Board of Education v. Sand, 227 Minn. 202, 211, 34 N. W. (2d) 689, 695.

[6]Independent School Dist. No. 68 v. Rosenow, 185 Minn. 261, 240 N. W. 649, 79 A. L. R. 434.

"* * * The voters shall have the power at an annual meeting to repeal and modify their proceedings in accordance with the powers therein conferred * * *."

Under this section, the electors of Westview could by a proper election revoke their prior vote at a second special meeting duly held before the original resolution had been passed upon by the county board.

■ Defendant also contends that because of procedural deficiencies in the second election the vote was invalid. He first urges that the form of the resolution set out on the ballot was too indefinite to enable an elector to intelligently cast his vote. The resolution which has been quoted previously is very general in its terms. However, although the description used was not desirable form, under the circumstances of this case it was sufficient to inform the voters of the business at hand. The resolution proposed at the first special meeting received considerable publicity. Discussion groups met to discuss the issue in the homes of the school district residents, and apparently the people of the district were generally informed of the controversy and the result of the first vote. The second election followed the first by less than one month, and in the interim no other school district meeting was held, nor had the county board acted on the original resolution. In the light of these facts, it is reasonable to assume that at the time of the second vote the content of the first resolution was fresh in the minds of the voters and the meaning of the second resolution clear.

Defendant indicates several other features of the second election which are subject to criticism. With the exception of the posted notices, apparently little publicity was given the election. Furthermore, only one hour was allotted for voting—from 11 a. m. to 12 noon. This no doubt accounts, at least partially, for the extremely light vote. As contrasted with the first election, where 273 persons voted, only 70 ballots were cast at the second meeting. The only posted notice introduced into evidence contained neither the hour of the election nor the signature of the clerk.

Without condoning this procedure, the fact remains that each element of the election met the minimum statutory requirements. The applicable statutory requirements read as follows:

"124.07. Upon written request of five freeholders and voters * * *, the clerk shall call a special meeting * * * upon ten days' posted notice * * *."

"124.01. * * * five legal voters shall constitute a quorum."

"122.28. Any district * * * may be dissolved by the board * * * on presentation of resolutions passed by a majority vote at a legal meeting * * *."

"124.01. * * * The polls at all school meetings shall be open at least one hour."

The last section fixes no time at which the hour of voting must fall. Though the midday hour seems somewhat inappropriate and ill-chosen, it was not so arbitrary or inconvenient as to justify invalidating the election upon that score alone.

Whether or not the time of election and signature of the clerk appeared upon the notices during the period they were posted is a fact question. The trial court found that the second resolution was adopted at a meeting "duly held" and "pursuant to ten days' posted notice as required by law." Implicit in these findings is the fact that the notices were complete during the period they were required to be posted. This finding is supported by uncontradicted testimony that the missing data had been inserted in ink which had apparently disappeared because of weather conditions. There is also testimony that one of the notices posted was behind a glass door, where the elements could not reach the ink. Although this particular notice is not before us, nevertheless there is evidence to support the court's finding, and it must stand.

An election conducted in this manner may justifiably be criticized. It skirts too close to minimum requirements and does not evidence that true desire to determine the wishes of the public which is the goal of the democratic system. However, on this record the election must stand as valid and as effective to revoke the first resolution.

Without the initiating action of a school district vote, the county board in this case had no jurisdiction to enter its order, and the order is void. It is to be hoped that the people of Westview are given another more adequate opportunity to express their sentiments on this matter and to finally settle the controversy. There appears to be no obstacle to calling a new meeting for that purpose.

Under this disposition of the case, it is unnecessary to consider defendant's other arguments, which all proceed on the assumption that the county board had jurisdiction to enter its order.

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

The proceedings relative to the second election held on July 18, 1949, appear permeated by a deliberate attempt to meet only the minimum legal requirements and to evade the spirit of free, open, and democratic referendum. The resolution passed subsequent to the first special election, as quoted in the majority opinion, was not expected to give notice of the matters to be determined at the meeting to more than a handful of interested persons. M. S. A. 124.07 requires ten days' posted notice, and further provides that such notice shall specify "the business named in such request * * * and the time and place of the meeting." It further provides that "No business except that named in the notice shall be transacted at such meeting." The notice here merely stated the desire to revoke "the resolution adopted at the Special Meeting of Common School District No. 138 Held June 20, 1949," and contained no further reference to the subject matter of such resolution.

Under such circumstances, I hesitate to affix this court's stamp of approval to the proceedings, and for these reasons I must dissent from the views expressed in the majority opinion.